Belinda MAJORS and Carrie Oliphant, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GREEN MEADOWS APARTMENTS, LTD., a limited partnership; Gordon Cavanaugh, individually and in his official capacity as the Administrator of the Farmers Home Administration; R. L. Blalock, individually and in his official capacity as the State Director of the Farmers Home Administration; Wayne Howell, individually and in his official capacity as the Georgia Director of Rural Housing of the Farmers Home Administration; Ernest L. Askew, individually and in his official capacity as the District Director of Farmers Home Administration; and Donnie Thomas, individually and in his official capacity as the Jefferson County Supervisor of the Farmers Home Administration, Defendants.

Civ. A. No. 680–28.

United States District Court,
S. D. Georgia,
Swainsboro Division.

Nov. 25, 1980.

Opinion on Dismissal Jan. 28, 1981.

Lisa J. Krisher, Robert W. Cullen, Augusta, Ga., for plaintiffs.

Henry R. Whisenhunt, Jr., Asst. U. S. Atty., Augusta, Ga., for defendants.

Maurice Steinberg, Augusta, Ga., for Green Meadows Apartments.

## ORDER

BOWEN, District Judge.

Named plaintiffs Majors and Oliphant are low income tenants in defendant Green Meadows Apartments Ltd. [Green Meadows], a housing development financed under the Rural Rental Housing Loan Program, section 515 of the National Housing Act of 1949. 42 U.S.C. § 1485 (1976). Pursuant to regulations promulgated under section 515, 7 C.F.R. § 1822 Ex.R. (1980), the Farmers Home Administration [FmHA], an agency of the United States Department of Agriculture, provides monthly rental assistance to Green Meadows for the benefit of plaintiffs. By letter dated June 17, 1980, Green Meadows, through its resident manager, informed plaintiffs that their leases would be terminated in thirty days.

In this action for declaratory and injunctive relief, plaintiffs claim that the purported lease terminations violate federal law and regulations and the fifth amendment.

Specifically, plaintiffs allege: (1) Green Meadows failed to notify plaintiffs of the tenant grievance and appeal procedure as provided in 7 C.F.R. §§ 1944.551–1944.559 (1980); (2) Green Meadows' actions to terminate plaintiff's tenancies violates plaintiffs' fifth amendment rights; (3) paragraphs 19 and 20 of the lease agreements between plaintiffs and Green Meadows contain provisions prohibited by federal regulations; (4) defendants Cavanaugh, Blalock, Howell, Askew and Thomas of the FmHA [federal defendants] failed to enforce the grievance and appeals procedure prescribed by federal regulations; (5) federal defendants failure to enforce tenant grievance procedures violates plaintiffs' fifth amendment property rights; and (6) federal defendants failed to comply with their mandated responsibility to approve lease agreements which do not violate federal law and regulations.

Presently before the Court are motions to dismiss filed by Green Meadows and federal defendants. Both parties argue that the Court lacks subject matter jurisdiction over the action, Fed.R.Civ.P. 12(b)(1), and that the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Under the Rural Rental Housing Loan Program, the FmHA provides rental assistance for eligible tenants in section 515 housing projects. Eligible tenants are defined as "low income famil[ies] . . . unable to pay the approved monthly rental rate for eligible FmHA RA [rental assistance] units within 25 percent of their adjusted monthly rental rate." 7 C.F.R. § 1822 Ex. R II C (1980). The rental assistance paid to the owner of the section 515 housing project is the difference between 25 percent of the tenant's adjusted monthly income and the approved monthly rental rate for the unit being occupied. Id. Ex. R II E. Owners participating in the rental assistance program must have FmHA–approved leases with assisted families. Id. Ex. R VII E. The regulations provide that monthly or annual leases will be executed, id. Ex. R VII E 1, and specifically prohibit the inclusion of certain clauses in the lease. See, e.

g., id. Ex. R VII E 2(e) (Authorization to the landlord to evict tenant without notice to tenant or any determination by a court of the rights and liabilities of the parties); id. Ex. R VII E 2(h) ("Agreement by the tenant to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court finds in favor of the tenant.").

When the owner or landlord of the Rural Rental Housing Project terminates the lease of an eligible tenant before the end of the lease term or takes other adverse action, see 7 C.F.R. § 1944.554(a)(1)–(7) (1980), the tenant must be notified of the specific reasons for the proposed action. Id. § 1944.555(b). The tenant must also be notified of his right to respond to the owner's action through an informal meeting with the owner. Id.; see id. § 1944.555(c). If such a meeting occurs, the regulations require the owner to prepare a summary of any discussion for submission to the FmHA District Director and the tenant. Id. § 1944.555(c). Upon receipt of this summary, the tenant may then invoke the grievance and appeal procedure as set forth in the regulations. Id. §§ 1944.556–1944.559. The tenant's failure to timely request a hearing under the grievance and appeal procedure renders the owner's disposition of the tenant's grievance final. Id. § 1944.-556(g).

The hearing available to the tenant is defined as "an informal proceeding before a hearing officer or hearing panel [see id. § 1944.556(b), (c)] at which evidence may be received without regard to whether that evidence could be employed in judicial proceedings." Id. § 1944.557(a). While the proceeding is informal, certain procedural safeguards are provided. For example, both the owner and tenant have a right to counsel, id. § 1944.557(b)(1), the hearing shall be private unless the tenant requests otherwise, id. § 1944.557(b)(2), and both parties may present evidence and confront and cross–examine witnesses. Id. § 1944.-557(b)(3), (4). Once the hearing officer or panel reaches a decision, it becomes binding on the parties unless the FmHA District

Director notifies them that the decision does not comply with FmHA regulations. *Id.* § 1944.558(a), (b). The decision may then be amended to effect conformance with the applicable federal regulations. *Id.*

Defendants argue in their motions to dismiss that plaintiffs failure to pursue the prescribed administrative remedy forecloses federal court review of the present controversy. Underlying this argument is the doctrine that available administrative remedies should be exhausted before judicial proceedings are undertaken. As explained by the Supreme Court, " 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone [, and] judicial interference is withheld until the administrative process has run its course." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1965); *see Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938); *Sunflower Electric Corp. Inc. v. Kansas Power & Light Co.*, 603 F.2d 791 (10th Cir. 1979). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence–to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972); *see McKart v. United States*, 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1663–1664, 23 L.Ed.2d 194 (1969); *Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 767, 67 S.Ct. 1493, 1500–1501, 91 L.Ed. 1796 (1947); *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5 Cir. 1980).

There is no dispute that the parties failed to engage the administrative procedure expressly intended to resolve controversies such as the premature termination of leases. Indeed, part of the relief sought by plaintiffs is to enjoin Green Meadows to comply with and federal defendants to enforce the prescribed remedy. The issue presented is whether the exhaustion doctrine should be applied when the administrative remedy is not statutorily mandated, the relief mechanism serves a limited func-

tion, and neither party has demonstrated compliance with the administrative procedure.

■ At the outset, the Court recognizes that application of the exhaustion doctrine is not dependent upon an express statutory exhaustion requirement. *See McClendon v. Jackson Television, Inc.*, 603 F.2d 1174, 1176 (5th Cir. 1979). *Cf. Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir. 1978) ("[W]hen exhaustion is statutorily mandated, the exhaustion requirement is jurisdictional and the district court must dismiss the action[;] ... [otherwise], courts must resort to a balancing test to determine whether exhaustion is necessary in a given case."). Thus, while the administrative remedy many not be legislatively mandated, policy reasons may nevertheless compel judicial application of the exhaustion doctrine. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969). Yet, the Court is also mindful that "the essence of [the doctrine] is *flexibility* and not the blind application of the doctrine in every case." *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137, 1138 n.1. (4th Cir. 1969); *see* 395 U.S. at 200–01, 89 S.Ct. at 1666–1667; *Bristol–Myers Co. v. F.T.C.*, 469 F.2d 1116, 1118 (2d Cir. 1972) ("the administrative exhaustion doctrine is less an inflexible command than a general guideline"). *But cf. Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (exhaustion doctrine strictly applies in military discharge cases since judiciary should avoid interfering with legitimate Army matters). As recognized by the Fifth Circuit, the exhaustion requirement, like "most comparable doctrines, is subject to exceptions." *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978).

■ The remedy set forth in 7 C.F.R. §§ 1944.551–1944.559 (1980) is not part of a broader statutory scheme delineating administrative actions which a party must undertake prefatory to judicial intervention. *See, e. g., Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979) ("[Freedom of Information Act] require[s] that a party

must present proof of exhaustion of administrative remedies prior to seeking judicial review."). Instead, the FmHA grievance and appeal procedure is a non–statutory means to equitably resolve certain well–defined disputes which commonly arise between landlords and tenants. *See* 7 C.F.R. § 1944.554 (a)(1)–(7). It is well established that the exhaustion doctrine is inapplicable when the relief requested is not within the authority of the administrative body to grant. *Hodges v. Callaway*, 499 F.2d 417, 420–21 (5th Cir. 1974). The limited nature of the relief mechanism, therefore, would in no event preclude judicial resolution of certain issues raised in plaintiffs' complaint such as the inclusion of prohibited clauses in plaintiffs' leases.

For the procedure to be effective, both tenant and owner must discharge certain responsibilities. The initial responsibility rests with the owner. When a tenant's lease is terminated, the owner must give notice of the tenant's right to respond to the owner's action. 7 C.F.R. § 1944.555(b). This notice is central to the administrative process since any tenant response is to be summarized by the owner and relayed to the FmHA District Director as well as the tenant. Significantly, the regulations require that the summary inform the tenant of the grievance and appeal procedure and describe the procedure in some detail. *Id.* § 194–555(c), Ex. A. Green Meadows, in seeking to invoke the exhaustion doctrine, has not demonstrated any compliance with these regulations on its own part.

 Before the exhaustion requirement may be applied, the administrative process must be "available" to the aggrieved party. *See Feinberg v. Federal Deposit Inc. Co.*, 420 F.Supp. 109, 114 (D.D.C. 1976). In evaluating availability, "[i]gnorance on the part of the uninitiated," *Henry v. Schlesinger*, 407 F.Supp. 1179, 1185 (E.D. Penn. 1976), is certainly one factor to consider, especially when the regulations explicitly place the burden of notice on another party. Since no showing has been made that plaintiffs were properly informed of the FmHA grievance and appeal procedure,

and since the administrative procedure, if invoked, would not address many of the issues raised in plaintiffs' complaint, the Court retains jurisdiction of the action.

Federal defendants and Green Meadows also seek dismissal of this action on the basis that plaintiffs' complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Generally, motions to dismiss under Rule 12(b)(6) are viewed with disfavor. *See International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465 (5th Cir. 1968). "The question [in deciding a 12(b)(6) motion] is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 601 (1979); *see United States v. Wynn*, 528 F.2d 1048 (5th Cir. 1976).

 The complaint states four causes of action against Green Meadows. Plaintiffs allege violations of federal regulations, specifically provisions regarding notice and prohibited clauses in rental assistance leases, as well as an infringement of plaintiff's fifth amendment rights. Viewed in a light most favorable to plaintiffs, as must be done on a 12(b)(6) motion, the Court is unable to conclude that these allegations on the face of the complaint show an insuperable bar to relief. Whether plaintiffs can ultimately prevail in this action "is a matter properly determined on the basis of proof and not merely on the pleadings." C. Wright & A. Miller, *supra*, at 603.

 With respect to federal defendants, plaintiffs allege that the FmHA failed to enforce the notice provisions and failed to properly approve the lease agreements between plaintiffs and Green Meadows as required by federal regulations. Of concern at present are Counts V and VI of plaintiffs' complaint. In these counts, plaintiffs aver that the FmHA "failed and refused" to enforce the notice requirements of 7 C.F.R. § 1944.551, *et seq.* and, in so doing, violated plaintiffs' fifth amendment rights.

As discussed earlier, under the regulations, the owner is vested with the responsibility of giving appropriate notice to the tenant of his opportunity to respond when his lease is terminated. Ultimately, the duty rests with the owner to inform the tenant of the grievance and appeal procedure through a summary of any informal discussion had with the tenant. In contrast to 7 C.F.R. § 1822 Ex. R VII E, which expressly requires FmHA approval of rental assistance leases and prohibits the inclusion of certain clauses, the regulations do not require the FmHA to ensure that owners properly discharge their notice responsibilities. Instead, involvement by the FmHA in tenant–owner disputes is keyed to receipt of the "summary of informal discussion" prepared by the owner. *Id.* § 1944.559(a). Upon receipt of this summary, the regulations direct the District Director "to ascertain that the tenant or applicant has received a copy of the summary and a copy of the procedures to obtain a hearing if matters could not be resolved through informal discussion." *Id.*

Plaintiffs have alleged no facts showing that federal defendants received a summary of informal discussions from Green Meadows and failed to act upon it, or that federal defendants were apprised of Green Meadows' actions and were thereby afforded an opportunity to enforce the notice requirements prior to the filing of this law suit. Applying the standards of Rule 12(b)(6), the Court therefore concludes that Counts V and VI of plaintiffs' complaint fail to state claims upon which relief can be granted.

Accordingly, based upon the foregoing analysis, IT IS HEREBY ORDERED:

(1) defendant Green Meadows' motion to dismiss is DENIED;

(2) Counts V and VI of plaintiffs' complaint against federal defendants are dismissed;

(3) plaintiffs' motion to strike portions of the affidavits by W. T. Lamb and Joan Cummings filed in support of Green Meadows' motion to dismiss are DENIED as moot.

FURTHER ORDERED, that the parties shall show cause on December 8th at 3:00 o'clock p. m. why this Court, while retaining jurisdiction of the action, should not stay these proceedings pending an administrative hearing of plaintiffs' grievance as provided in 7 C.F.R. §§ 1944.551–1944.559 (1980).

## OPINION ON DISMISSAL

Defendant Green Meadows Apartments, Ltd. [Green Meadows] is a housing development in Jefferson County, Georgia, financed under the Rural Rental Housing Loan Program, [RRH], section 515 of the National Housing Act of 1949. 42 U.S.C. § 1485 (1976). Named plaintiffs, tenants in Green Meadows brought this action styled a class action, alleging that Green Meadows and defendants Cavanaugh, Blalock, Howell, Askew and Thomas of the Farmers Home Administration [FmHA] [federal defendants] violated certain regulations promulgated under section 515. Specifically, plaintiffs asserted violations of the tenant grievance and appeal procedure as provided in 7 C.F.R. §§ 1944.551–1944.559 (1980), and claimed that certain clauses in their leases were prohibited by 7 C.F.R. § 1822 Ex. R VII E (1980). Plaintiffs seek declaratory and injunctive relief.

By Order entered November 25, 1980, the Court denied Green Meadows' motion to dismiss, but granted in part federal defendants' motion to dismiss. Counts V and VI of plaintiff's complaint alleged that the FmHA "failed and refused" to enforce the notice requirements of 7 C.F.R. § 1944.551, *et seq.* and, in so doing, violated plaintiffs' fifth amendment rights. On review of the regulations cited by the parties and set forth in plaintiffs' complaint, the Court concluded that the responsibility of giving tenants notice of the grievance and appeal procedure directly rests with the owner. 7 C.F.R. § 1944.555(c), Ex. A. The Court then stated:

In contrast to 7 C.F.R. § 1822 Ex. R. VII E, which expressly requires FmHA approval of rental assistance leases and prohibits the inclusion of certain clauses, the

regulations do not require the FmHA to ensure that owners properly discharge their notice responsibilities. Instead, involvement by the FmHA in tenant-owner disputes is keyed to receipt of the "summary of informal discussion" prepared by the owner. *Id.* § 1944.559(a). Upon receipt of this summary, the regulations direct the District Director "to ascertain that the tenant or applicant has received a copy of the summary and a copy of the procedures to obtain a hearing if matters could not be resolved through informal discussion." *Id.*

Based on this analysis, the Court dismissed Counts V and VI of plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6).

Thereafter, plaintiffs filed a motion requesting the Court to reconsider its order dismissing Counts V and VI. Responsive pleadings were subsequently filed and the case partially progressed through the discovery process. The Court conducted hearings and settlement conferences in which officers of the FmHA participated and on January 14, 1981, entered a consent order which disposed of the case between the plaintiffs and defendant Green Meadows. A consent order between plaintiffs and federal defendants was proposed by plaintiffs' counsel, but rejected by the assistant United States Attorney. The government has not proposed an alternative.

During the pendency of this action, new regulations were promulgated by the FmHA. *See* discussion *infra.* These regulations have the force and effect of law, *see Anderson, Clayton & Co. v. United States,* 562 F.2d 972, *rehearing denied,* 565 F.2d 1215 (5th Cir. 1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), and the FmHA is bound to comply with the regulations it promulgates. *North Georgia Buildings and Construction Trades Council v. Goldschmidt,* 621 F.2d 697 (5th Cir. 1980); *Sheehan v. Army and Air Force Exchange Service,* 619 F.2d 1132 (5th Cir. 1980).

Based on the ensuing discussion of the new FmHA regulations, and the assurances of FmHA personnel that the new regulations will be fully implemented, the Court concludes that the rules and procedures prescribed therein amount to a fulfillment of plaintiffs' objective in bringing this action. Consequently, the Court is unable to discern a continuing "justiciable controversy" between the parties. Guidance on this issue of mootness is gleaned from the recent decision of the Fifth Circuit Court of Appeals in *Sannon v. United States,* 631 F.2d 1247 (5th Cir. 1980). Dismissing an appeal on the basis of mootness, Judge Hill held that "newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what once was a viable case." *Id.* at 1250. Subject to the following analysis, the Court finds that the newly promulgated FmHA regulations afford plaintiffs the sought-after relief, and, thus, the present action is now moot.

On October 27, 1980, the FmHA redesignated and revised its regulations pertaining to the section 515 Rural Housing Loan Program. This revision was due primarily to the FmHA's recognition that the prior regulations, which formed in part the basis of plaintiffs' complaint, were unclear as to the duties of multiple housing loan recipient and the concomitant supervisory responsibilites of the FmHA. As the summary for the new regulations states:

> FmHA regulations presently provide only limited guidance to the public and FmHA personnel concerning supervision of Multiple Housing loan and grant recipients and no guidance concerning the operation and maintenance of these housing projects to assure that the projects are operated for the benefit of those they are intended to serve .... The purpose of this regulation is to provide the requested policy, and to establish uniform management and supervision in affected programs.

45 Fed.Reg. 70736 (1980).

Central to the new regulations is section 1930 subpart C. 45 Fed.Reg. 70738 (1980) (to be codified at 7 C.F.R. §§ 1930.101–1930.-150). The FmHA District Director, under these new regulations, is vested with primary responsibility for supervising multiple

family housing borrowers. *Id.* § 1930.109. Some 11 non-inclusive methods of supervision are specified including organizational and development planning, project inspections and guidance by memorandums. *Id.* § 1930.110. The regulations prescribe that supervisory visits to project sites shall be made by the District Director or other FmHA officials "when necessary to assure compliance with FmHA policies and objectives," and that, after the first year, the District Director shall make one visit at least every two years to each project. *Id.* § 1930.119. "Effective supervision" by the FmHA is defined for the District Director, State Director, and State Staff. *Id.* § 1930.117. The District Director is expressly required to "[e]mphasize to the borrower ... that they, not the FmHA are responsible for managing the project ... and for compliance with ... FmHA requirements." *Id.* § 1930.117(a).

An integral part of section 1930 subpart C·is a handbook prescribing FmHA policies and procedures for management of multiple housing projects. Multiple Housing Management Handbook 45 Fed.Reg. 70746–72 (1980) (to be codified at 7 C.F.R. §§ 1930.-101–1930.150 Ex. B). The purpose of the regulations contained in the management handbook is "to assist in the successful operation of FmHA-financed rental projects." *Id.* Ex. B I. Of relevance to the present case are part VII of the handbook, which concerns tenant-landlord leases, and part XIII which delineates the rules governing lease terminations and evictions for cause.

■ Under part VII, all project leases shall be in writing and must cover a period of at least 30 days but not more than one year. *Id.* Ex. B VII. A.1. While the FmHA is not required to draft and provide a borrower with a form lease,

[t]he form of lease to be used, and any modifications thereof, must be approved by the FmHA District Director. When submitting a lease form for FmHA approval, it must be accompanied by a letter from the borrower's attorney regarding its legal sufficiency and compliance with Federal and State Law and FmHA regulations.

*Id.* Ex. B VII A.3. In contrast to 7 C.F.R. § 1822 Ex. R VII E, (reiterated at *id.* Ex. B VII D.1–8) which only listed prohibited lease clauses, part VII of the new management handbook prescribes numerous clauses and provisions which will be *required* in FmHA-financed housing project leases. Of particular interest are the following mandatory lease provisions:

The circumstances under which management may terminate the lease, all limited to good cause, and the length of notice required for the tenant to exercise the right to terminate.

*Id.* Ex. B VII C.13, and

The agreement that any tenant grievance or appeal for management's decision shall be resolved in accordance with procedures consistant with FmHA regulations covering such procedures, which are posted in the rental office.

*Id.* Ex. B VII C.14. Thus, the FmHA is now expressly required to ensure that a tenant has notice of the section 1944.551, *et seq.* grievance and appeals procedure in his lease.

■ Part XIII of the management handbook provides a welcome elucidation of the greivance and appeals procedure set forth in 7 C.F.R. §§ 1944.551–1944.559. ·The regulations prescribe an entitlement of tenants to continued occupancy which may not be terminated except upon "material noncompliance" with the lease for or other "good cause." 7 C.F.R. §§ 1930.101–1930.150 Ex. B XIII A.1. The term "material noncompliance" with a lease is defined to include:

(a) one or more substantial violations of the lease or (b) repeated minor violations of the lease which disrupt the liveability of the project, adversely affect the health or safety of any person, or the right of any tenant to the quiet enjoyment of the leased premises and related project or have an adverse financial effect on the project.

*Id.* Ex. B XIII A.2. Other "good cause" may not serve as a basis for termination or nonrenewal of a lease unless the borrower "has given the tenant prior notice that the

conduct will constitute a basis for termination of tenancy." *Id.* Ex. B XIII A.3.

Part XIII also rectifies a major shortcoming of the "notice" provisions of 7 C.F.R. §§ 1944.555(b)–1944.555(c). Under section 1944.555(b), a borrower must notify a tenant in writing of any proposed action of eviction or termination, and must inform the tenant of his right to respond to the proposed adverse action within five days. The borrower was not expressly required to inform the tenant of the grievance and appeals procedure at this stage. Instead, such notice was to be included as a part of the "summary of discussion" prepared by the borrower, after the tenant had responded to the borrower's proposed action, and then given to the tenant as well as the FmHA District Director. *Id.* § 1944.555(c). In contrast, the new management handbook expressly requires that the initial section 1944.555(b) notice, given at the first instance of any proposed adverse action by the borrower, "[s]tate the tenant's right under the Tenants Grievance and Appeals Procedures as outlined in Subpart L of Part 1944 of this Chapter." 7 C.F.R. §§ 1930.-101–1930.150 Ex. B XIII B.1c.

To summarize, the Multiple Housing Management Handbook prescribes several new procedures of significance to this action. An enumeration of specific clauses and provisions to be included in RRH project leases is provided—most notably a provision stating grievance and appeals procedures. All such leases must be approved by the FmHA. Furthermore, when adverse action is proposed against a tenant, the borrower, at the outset, must inform the tenant of the grievance and appeals procedure.

In light of the new regulations promulgated by the FmHA and based upon the foregoing analysis of those regulations, the Court enters the following findings as a systematized reiteration of certain relevant provisions of the new FmHA regulations:

(1) Tenants in section 515 rural rental housing projects have an expectation of continued occupancy as provided by 45 Fed. Reg. 70738 (1980) (to be codified at 7 C.F.R. §§ 1930.101–1930.150 Ex. B XIII A).

(2) Any borrower termination or refusal to renew any section 515 rural rental housing tenancy shall only be upon material noncompliance with the lease or for other good cause as provided by 45 Fed.Reg. 70738 (1980) (to be codified at 7 C.F.R. §§ 1930.101–1930.150 Ex. B XIII A.1–4).

(3) A Borrower's notice of intent to terminate shall be handled in accordance with 45 Fed.Reg 70758 (1980) (to be codified at 7 C.F.R. §§ 1930.101–1930.150 Ex. B XIII B.1a–c).

 (4) All section 515 rural rental housing project leases currently in effect which contain clauses or provisions in violation of federal regulations (e.g. 45 Fed.Reg 70752–53 (1980) (to be codified at 7 C.F.R. §§ 1930.101–1930.150 Ex. B VII)) have no legal effect. As current section 515 rural rental housing project leases expire, tenants and section 515 borrowers shall execute new leases which fully comply with all applicable laws and regulations. These leases shall be approved by the FmHA in accordance with the applicable provision of the Multiple Housing Management Handbook. *Id.* Ex. B VII A.3. New section 515 rural rental housing project leases shall be executed in accordance with applicable laws and regulations and approved, as required, by the FmHA.

ACCORDINGLY, IT IS HEREBY ORDERED that, upon the FmHA's newly promulgated regulations which have the force and effect of law and the FmHA's full compliance therewith, this action is dismissed because the issues are not moot. Each party shall bear their own costs.