**HOGLUND–HALL, Respondents,**

v.

**Jeffrey KLEINSCHMIDT, et al., Appellants.**

**No. C7–85–1472.**

Court of Appeals of Minnesota.

Feb. 18, 1986.

Susan L. Estill, Krass, Meyer & Walsten, Chartered, Shakopee, for respondents.

Michael W. McDonald, Southern Minnesota Regional Legal Services, Inc., Carver, for appellants.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and LANSING, JJ.

## OPINION

RANDALL, Judge.

Jeffrey and Carolyn Kleinschmidt appeal from a judgment entered July 31, 1985, that they had unlawfully detained certain premises. The trial court, sitting without a jury, found the Kleinschmidts' continued occupancy of the apartment constitutes a threat to the safety of the other tenants and the management in violation of the lease. The court also found that appellants voluntarily waived their rights under the Tenants Grievance and Appeals Procedures of certain federal regulations. On August 1, 1985, a writ of restitution was issued to Hoglund-Hall, the partnership which owns the apartment building where Kleinschmidts reside. Based upon an emergency telephone request for relief on August 2, 1985, the Court of Appeals ordered a stay of the writ pending appeal on August 5, 1985. The Minnesota Supreme Court denied a petition for further review of that order on October 4, 1985. We reverse.

## FACTS

Appellant Jeffrey and Carolyn Kleinschmidt, husband and wife, leased an apartment on December 22, 1984, at the Brittland Apartments in Jordan, Minnesota. Respondent Hoglund-Hall is a partnership which owns the Brittland Apartments. The partnership is composed of Bruce R. Hoglund, the managing partner and Lyle C. Hall. The partnership name was allegedly registered with the Secretary of State's office at some unspecified date. Dick Link is the resident manager.

Brittland Apartments, a 24 unit complex, receives rent subsidies from the Farmers Home Administration (FmHA) of the United States Department of Agriculture, for qualifying tenants. Consequently, tenants generally tend to be low-income families who qualify for rent subsidies. Because it receives federal funds, the lessor is bound by federal regulations promulgated by the FmHA.

The federal regulations require that the lease contain certain provisions and prohibit certain other provisions. The form of the lease in question was previously approved by the FmHA. The lease initially lists Brittland Apartments as the landlord and is signed by Bruce Hoglund, under which the typewritten word "landlord" appears.

On the afternoon of May 20, 1985, Carolyn Kleinschmidt telephoned her husband at work. She told him that a man named Dennis Stitzinger had intentionally tried to drive his vehicle into her car while she was stopped at an intersection in Jordan. Kleinschmidts knew Stitzinger, who was also a tenant at the Brittland Apartments. Carolyn Kleinschmidt was nine months pregnant at the time.

Later that day, about 5:00 or 5:30 p.m., Jeffrey Kleinschmidt sped into the apartment parking lot, stopped, hurriedly exited the car, smashed the windows and body of

Stitzinger's parked car with a tire iron, and raised the tire iron as if to strike another tenant, Glen Boatman, Sr. Kleinschmidt was arrested by the Jordan police and subsequently charged with aggravated criminal damage to property to which he pled guilty.

Dick Link notified Bruce Hoglund of the incident. Several days later Hoglund received a petition prepared by Carolyn Stitzinger (Dennis Stitzinger's wife) and signed by seventeen tenants. The petition requested that appellants be removed from their apartment.

Respondents also mention a previous incident on March 11, 1985, involving the Jordan police. Jeffrey Kleinschmidt allegedly kneed Carolyn Kleinschmidt in the lower stomach area while she was seven months pregnant. Carolyn fled her apartment and sought refuge from Dennis and Karen Stitzinger. They took her to a hospital where she remained overnight. No charges were filed.

Carolyn Kleinschmidt was informed by the management shortly after the May 20 tire iron incident that certain tenants wanted them to move out of the complex. She gave birth on May 23, 1985. The apartment management consented to Carolyn Kleinschmidt's continued presence, with the understanding that Jeffrey Kleinschmidt would not be living with her.

After hearing from several tenants that Jeffrey Kleinschmidt was back, Hoglund telephoned Carolyn Kleinschmidt in late May or early June to discuss the matter. They agreed over the telephone that appellants would send Link notice that they would move out within thirty days, by July 1, 1985. When he failed to receive the notice, Hoglund again called appellants on June 5 or 6, 1985. This time the parties agreed that appellants would give a 60 day notice to be out by August 1st. Hoglund received this notice on June 8, 1985. Based upon this notice, Hoglund rented their apartment to another lessee.

In early July appellants sent Hoglund a letter stating:

Our lawyers advised us to send this letter stating that we were pressured into giving you a 60 day notice, therefore we are withdrawing it and will not move out on 8–1–85. If you wish to go to court it is your choice. If you have any questions you can call our lawyer at 448–4880 but don't call us as we will not talk to you about this.

Hoglund received the letter on July 5, 1985.

Upon receipt of the letter, Hoglund-Hall instituted an unlawful detainer action. *No written notice of termination of the lease was ever given to appellants.* The Hoglund-Hall partnership filed a summons and complaint on July 12, 1985. Appellants filed an answer and various motions to dismiss. Appellants moved to dismiss the complaint on the following grounds:

1. Hoglund-Hall's complaint failed to allege ownership or any other interest in the premises as required by Minn.Stat. §§ 566.03 and 566.05 (1984), and therefore failed to state a claim upon which relief could be granted.

2. The complaint failed to allege facts demonstrating that Hoglund-Hall complied with the requirements of Minn.Stat. § 504.22 (1984), as allegedly required by Minn.Stat. § 566.05, and therefore, the complaint should have been dismissed.

3. Kleinschmidts alleged a failure to comply with Minn.Stat. §§ 333.01–333.06 (1984).

4. Hoglund-Hall failed to comply with FmHA regulations in terminating its lease with Kleinschmidts.

After oral arguments on July 23, 1985, the county court denied the first three motions and reserved decision on the fourth motion until trial.

After trial, held July 30, 1985, the court found that appellants had unlawfully detained the premises. Among the findings of fact made by the court, the following are relevant:

II

That said lease, at page four, paragraph 16(C), provided among other things:

"If the tenant's continued occupancy constitutes a threat to the health and safety of other tenants or landlord (generally, by a violent action such as use of firearms, arson, etc.), or the tenant waives his right under the Tenant Grievance and Appeals Procedures, eviction shall be accomplished in accordance with state law."

## III

That said lease, at page five, paragraph 21, provided as follows:

"... if, however, the tenant's continued occupancy constitutes a threat to the health and safety of other tenants or the management, or the agent waives his or her rights under the Tenants Grievance and Appeals Procedures of said regulations, the eviction shall be accomplished in accordance with state law alone."

## IV

That the tenants' continued occupancy of said apartment #5 constitutes a threat to the safety of the other tenants and to the management.

## V

That the Defendants waived their rights under the Tenants Grievance and Appeals Procedures of the F.H.A. regulations, and that such waiver was knowingly made and not made under duress.

In his memorandum the trial judge explained that the lease itself authorized the eviction under the circumstances and, since appellants waived their rights to FmHA grievance procedures, the landlords properly proceeded under state law. Judgment was entered on July 31, 1985.

On August 1, 1985, Hoglund-Hall obtained a writ of restitution. The writ was served on appellants on August 2, 1985. Upon receipt of the writ, appellants orally moved to dismiss the complaint, amend the findings of fact and issue a stay of the writ. Appellants claim also to have moved for a new trial. The trial court apparently denied the motions, although no transcript of the proceedings has been included with the briefs and no order relating to these motions appears in the trial court file.

Appellants sought an emergency stay of execution of the writ pending appeal from the court of appeals by telephone on the afternoon of Friday, August 2, 1985. An order staying the writ was granted that day, and signed the following Monday, August 5, 1985. A petition for further review of that order was denied by the Minnesota Supreme Court on October 4, 1985.

The Kleinschmidts appeal from the judgment and from the pre-trial order denying their motions to dismiss.

## ISSUES

1. Did the trial court err in finding that the tenants' continued occupancy constitutes a threat to the safety of the other tenants and to the management?

2. Did the trial court err in issuing findings of fact that the respondent acted in accordance with all FmHA regulations pertaining to termination of appellants' lease?

3. Did the trial court err in denying appellants' motion to dismiss respondents' complaint for failure to allege facts showing compliance with Minn.Stat. § 504.22?

4. Did the trial court err in denying appellants' motion to dismiss or stay proceedings based on respondents' alleged failure to comply with Minn.Stat. § 333.01 through 333.06?

5. Did the trial court err in denying appellants' motion to dismiss respondents' complaint for failure to allege facts establishing respondents' right to recover possession?

## ANALYSIS

### I.

*Threat to Safety*

Tenants in housing subject to the FmHA regulations at issue here may be terminated only for "material noncompliance with the lease" or for "other good cause." "Other good cause" under the federal regulations includes:

b. Action or conduct of the tenant which disrupts the liveability of the

project by adversely affecting the health or safety of any tenant, or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities, or that has an adverse financial effect on the project.

7 C.F.R. § 1930, (exhibit B) (1985). The trial judge found that appellants' continued occupancy constitutes a threat to the safety of the other tenants and to the management.

On review of a trial court's findings of fact, the court of appeals is bound by the clearly erroneous standard of review. Minn.R.Civ.P. 52.01. Appellants argue that the trial court clearly erred because (1) the fact that respondents gave appellants 60 days to vacate indicates they did not view appellants as an immediate threat; (2) the tire iron incident was an isolated incident; (3) Kleinschmidt's act was committed against property, not persons; (4) Jeffrey Kleinschmidt is required to remain law abiding under the terms of his release in the criminal matter; and (5) there was no showing that appellants were a present danger to others since the tire iron incident or at the time of trial.

 Turning to the evidence considered by the trial court, it is apparent that the judge's finding is a reasonable one, not clearly in error. That the tire iron incident occurred is not disputed. As the trial court stated it:

> Certainly, the uncontradicted testimony of eye-witnesses to Defendant Jeffrey Kleinschmidt's driving conduct and other actions at 5:00 p.m. in the afternoon during the May 20, 1985 incident in the parking lot of an apartment complex where 25 to 30 children live supports Plaintiff's contention that his presence constitutes a threat to the health and safety of other tenants.

The 60 day notice is not conclusive concerning appellants' safety threat. In addition, there was testimony by Carolyn Stitzinger that Jeffrey Kleinschmidt had beaten his pregnant wife. Therefore the tire iron inci-

dent was not an isolated instance of violence. Further, a witness testified that Mr. Kleinschmidt raised the tire iron at him as if to strike him. This testimony, along with that of Mrs. Stitzinger, tends to show that Jeffrey Kleinschmidt has been violent towards persons as well as property. The petition submitted by the tenants indicates that at least some of the tenants felt threatened by appellants' continued presence. Whether additional violent incidents should be required before it can be said that a tenant is a safety threat is a line-drawing problem. The line drawn by the trial court is a reasonable one. The record supports the trial court's finding on the issue of safety.

## II.

### Termination Notice

The crux of this issue is whether certain FmHA regulations governing federally subsidized housing were complied with. In particular, the problem is what notice of termination of tenancy is required in this situation. Among the applicable federal regulations are the following:

XIV. *Termination of Tenancy and Eviction*

\* \* \* \* \* \*

A. *Tenant's Entitlement to Continued Occupancy.*

1. *General.* The Borrower or project manager may terminate or refuse to renew any tenancy only for material noncompliance with the lease or other good cause \* \* \*:

\* \* \* \* \* \*

B. *Notice of Termination.* Any notice to terminate tenancy must be based on material violation of the lease terms or for other good cause as determined by the borrower or the project manager.

1. The notice of intent to terminate the tenancy will be handled according to the terms of the lease. Tenants will be given prior notice of eviction according to State or local law.

7 C.F.R. § 1930 (exhibit B) (1985). Extensive notice requirements are included.[1]

---

**1.** The regulations require that *the notice must:*
 a. Refer to relevant provisions in the lease.

 b. State the reasons for the termination with enough specificity to enable the tenant to

Waiver of this notice of termination is prohibited by the regulations:

D. *Prohibited Lease Clauses.*

Lease clauses in the classifications listed below shall not be included in any lease ...

\* \* \* \* \* \*

4. *Waiver of Legal Notice by Tenant Prior to Actions for Eviction or Money Judgments.*

Agreement by tenant that the landlord may institute suit without any notice to the tenant that the suit has been filed.

*Id.*

■ Appellants maintain that the trial court's findings effectively hold that if a tenant's continued occupancy constituted a threat to the health and safety of other tenants, an eviction can be accomplished under state law (which does not require prior written notice in this situation) without regard to FmHA regulations (which do require prior written notice). We agree with appellant.

Respondents claim to have complied with the FmHA regulations regarding pre-eviction notice requirements in terminating the lease. The regulations do not require pre-eviction notice in all situations, in respondents' view, but only where required by the lease or by state law. Respondents argue that the terms of the lease (paragraphs 16 and 21) do not require prior notice of termination. They reason that where action of the tenant is a threat to the health and safety of the other tenants, other notice terms in the lease do not apply and the eviction shall be accomplished under state law. Respondents argue that state law does not require pre-eviction notice prior to service of a summons and complaint in unlawful detainer under Minn.Stat. §§ 566.05 and 566.06 which govern the form of summons and complaint and, therefore, written notice of termination was not required.

In effect, respondent is reading portions of the regulations in isolation by focusing solely on the statements that:

The notice of intent to terminate the tenancy will be handled according to the terms of the lease. Tenants will be given prior notice of eviction according to state or local law.

It is true that, if the reader stops there, he or she has the impression that notice is

---

prepare a response. In those cases where the proposed termination of the tenancy is due to the tenant's failure to pay rent, a notice stating the dollar amount of the balance due on the rent account and the date of such computation shall satisfy the requirement of specificity.

c. State that the tenancy is terminated on a date specified.

d. Advise the tenant that if he or she remains in the leased unit on the date specified for termination, the borrower may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense.

2. *The notice shall be accompanied by: (1) Sending a letter by first class mail, properly stamped and addressed, to the tenant at his or her address at the project, with a proper return address and (2) serving a copy of the notice on any adult person answering the door at the leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by affixing the notice to the door. Service shall not be deemed effective until both notices provided for herein have been accomplished.* The date on which the notice shall be deemed to be received by the tenant shall be the date on which the first class letter provided for in this paragraph is mailed, or the date on which the notice provided for in this paragraph is properly given, whichever is later.

3. *A copy of any eviction notice will be forwarded to the FmHA District Office. The District Director will review the notice for compliance with Subpart L of Part 1944 of this Chapter and any State Supplements that have been issued covering tenant evictions with respect to the proper preparation and handling of the notice.* [Subpart L of Part 1944 deals with the FmHA Tenant Grievance and Appeals Procedure. *See* 7 C.F.R. §§ 1944.551–1944.559 (1985)]. If the notice is found to be properly prepared, no further action is needed. If the notice is found to be improperly prepared, the District Director will notify the borrower to cease the action and will then inform the borrower how the notice is improperly prepared. The District Director will not indicate any opinion on the merits of the eviction to the borrower or project manager at this time.

7 C.F.R. § 1930 (exhibit B) (1985) (emphasis added).

governed solely by state law. But the regulations next state that *"The notice must * * *"* and detail several requirements as to what the notice must contain and how it shall be served on the tenant. The notice must (1) refer to relevant provisions in the lease; (2) state the reasons for the termination; and (3) be accompanied by (a) sending a letter by first class mail, properly stamped and addressed, to the tenant at his or her address at the project, and (b) serving a copy of the notice on any adult person answering the door. 7 C.F.R. § 1930 (exhibit B) (1985). Service is ineffective until both notices are received. *Id.* A copy of the eviction notice must be forwarded to the FmHA District Office for review. *Id.* If the notice is found to be improper, efforts to terminate the tenancy must cease until properly prepared. *Id.* We hold that a written notice is required.

All of these notice requirements would be superfluous if respondents' interpretation prevailed here. State law requires less notice than what the regulations require. Leases could be written to supercede applicable federal regulations with state law. This is what respondents claim should happen here: state law was complied with, as was the lease, therefore the federal notice regulations are inapplicable. Federal notice requirements apply only when state law requires a notice, in respondents' view.

To properly construe these regulations, they need to be read as a whole. The regulations govern the form of the lease. A provision permitting waiver of the notice of termination established by the regulations is prohibited. Therefore, the lease must incorporate the notice requirements of 7 C.F.R. subpart C, Exh. B XVIII. Appellant correctly points out that where a lease provision contradicts FmHA regulations, the regulations control. *See Majors v. Green Meadows Apartments*, 546 F.Supp. 895, 903 (S.D.Ga.1981).

Finally, appellants claim that the trial court's finding that appellants waived their right to tenants' FmHA grievance and appeals procedures is irrelevant. A review of the regulations confirms appellants' view that the notice and grievance provisions govern two entirely different procedures.

The issue under the FmHA regulations here is the notice question. Appellants' letter to Hoglund (received June 8th) stating that they would vacate the apartment by August 1st was not an effective waiver of the FmHA notice requirements. Arguendo, if that letter is deemed to be a waiver, the letter Hoglund received from appellants on July 5th expressing their clear intent to remain and to exercise their legal rights placed the burden back on respondents to restart the federally regulated eviction process with the appropriate written notice.

As for the requirement that tenants be given prior notice of eviction according to state or local law, adequate notice must be read to include both federal and state/local law. Otherwise the federal regulations governing notice would be a nullity in all states with notice requirements less strict.

The record supports the trial judge's conclusion that the landlords had legitimate concerns about the safety of the other tenants. The landlords' attempt to evict appellants was not arbitrary or capricious. We do not minimize Jeffrey Kleinschmidt's actions. On the facts of this case, we are compelled to follow the directives of the federal regulations.

Since no written notice of termination was given the Kleinschmidts prior to service of the unlawful detainer summons and complaint, the trial court is reversed, but on this ground only. We need not rule on the last three issues concerning compliance with state law.

## DECISION

The trial court's finding that appellants' continued presence in the Brittland Apartment complex constituted a threat to the safety of the other tenants and to the management was supported by the record and was proper. However, the trial court erred by making findings which effectively held that applicable FmHA regulations were complied with. Notice of termination requirements under the federal regulations supercede state law. The regulations must be complied with before the apartment

management can terminate a tenancy. These requirements include written notice of the reasons for eviction. We find no effective waiver of the notice requirement.

State law questions need not be decided here.

Reversed.