**HOUSING AND REDEVELOPMENT AUTHORITY OF WACONIA, Respondent,**

v.

**Katherine CHANDLER, Appellant.**

No. C8-86-1426.

Court of Appeals of Minnesota.

April 7, 1987.

Timothy J. Looby, Melchert, Hubert, Sjodin & Willemssen, Waconia, for respondent.

Paul W. Onkka, Jr., Southern Minnesota Regional Legal Services, Carver, for appellant.

* Acting as judge of the Court of Appeals by ap-

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE,* JJ.

## OPINION

STONE, Judge.

Katherine Chandler appeals from an August 14, 1986 judgment of restitution in an unlawful detainer action in favor of respondent Housing and Redevelopment Authority of Waconia.

Chandler claims that the Housing Authority was barred from seeking a writ of restitution because it failed to follow its own rules in objecting to the grievance hearing officer's conclusions and thus was bound by the decision. She further asserts that the judgment of restitution should be reversed because the current unlawful detainer action was based on alleged lease violations that could have been but were not raised in a previous unlawful detainer complaint and further because the Housing Authority failed to meet its burden of proving that she was responsible for serious and material breaches in the parties' rental agreement. We reverse.

## FACTS

On January 1, 1985, Chandler entered into a lease agreement for an apartment with the Housing Authority, a public housing agency organized in part to own and manage housing for low income residents of Waconia. Two weeks before January 1, pursuant to agreement with the Housing Authority, Chandler had begun occupancy of the premises with her four children (a fifth child was born in early 1985). On the date the lease was signed, Shirley Dueffert, manager of the housing facility, inspected the premises and found the condition of the apartment satisfactory.

A second inspection of the premises on June 11, 1985 showed them to be in general disrepair. Among the problems noted were: broken doors and windows, decaying garbage in the kitchen, scattered debris throughout the rooms, an overflowing toilet and water seepage through the ceiling.

pointment pursuant to Minn. Const. art. 6, § 2.

Dueffert also noted that Chandler's husband was in the home, although the lease did not specify that he would be an occupant. Chandler explained that her husband had just arrived the night before.

In early December 1985, the Housing Authority commenced an unlawful detainer action based solely on Chandler's failure to pay rent over several months. The action was continued to enable Chandler to pay the back rent and was subsequently dismissed. On January 10, 1986, Dueffert conducted a third inspection of the premises and found that, although somewhat improved, problems with the condition of the apartment continued.

In addition, Dueffert noted that a freezer was in use in the basement. The lease specified that use of extra utilities required an additional deposit which had not been made at the time of the inspection.

Dueffert's attempts to conduct a fourth interior inspection up to the date of trial were unsuccessful. Chandler remained in the apartment and continued to pay rent which the Housing Authority accepted through March 1, 1986.

In March 1986, a second unlawful detainer action (the instant case) was commenced. The complaint alleged numerous violations of the lease agreement summarized as: (1) failure to report changes in family composition and income in violation of Article III; (2) repeated and serious failure to maintain the premises in a sanitary manner and failure to conduct herself and her family in a manner that did not infringe upon her neighbor's right to peaceful enjoyment of their accommodations in violation of Article IV; (3) keeping a domestic animal on the premises in violation of Article IV; (4) failure to use reasonable care in maintaining the condition of the premises and the surrounding exterior grounds, failure to notify the Housing Authority promptly of necessary repairs and failure to keep sidewalks and parking areas clear of snow and ice in violation of Article VI; (5) failure to maintain the premises in a manner as to prevent health problems in violation of Article VI; and (6) chronically delinquent rent payments in violation of Article X.

Pursuant to the parties agreement, a grievance hearing was held on April 15, 1986. The hearing official concluded that Chandler should be allowed to remain in her apartment contingent upon entering into a probation agreement prepared by the Housing Authority, and stated:

After listening to the grievances presented by two neighbors, the custodian and Shirley Duefert, I concluded there were three issues being discussed: The accused destructive behavior [by] one of the Chandler children, the lack of upkeep on the rental unit, and delinquent rent payments.

Because Catherine [Chandler] had already addressed some of these issues and seemed willing to continue to address them, I suggested the Chandlers be allowed to stay, contingent on a probation agreement. The agreement proposed and drawn up by the HRA should be signed by both parties.

I arrived at the decision to give them one more chance for several reasons. Regarding the neighbor's complaints, I did not hear proof presented that this child actually caused the damage spoken of, and they also admitted that he was always accompanied by other children. Catherine [Chandler] responded to their complaints by saying that she was not aware of most of the incidents, and would have or will reprimand him. She also said he is now in therapy at the Mental Health Center. I suggested she get a statement from his therapist documenting his awareness of this alleged destructive behavior and his opinion, indicating to the concerned parties that the issue is being addressed. Regarding the upkeep of the property, the custodian said that after a warning was issued, he noticed an improvement and the interior improved on a second inspection. Regarding the rent, although she was obviously delinquent in her rent payments, she is now up to date and says she will pay her rent on time in the future.

The Housing Authority did not prepare a probation agreement, nor did it formally appeal the decision of the hearing official.

However, on April 23, 1986, the Housing Authority simply sent Chandler a notice of termination, effective May 31, 1986.

Prior to the unlawful detainer trial on June 11, 1986, Chandler's monthly rent was recertified and increased by $48 to account for her husband's income. Apparently, Chandler's June 1986 rent payment was mistakenly deposited along with other rents received. Dueffert testified that she tried to return the check to Chandler but that Chandler would not see her. At the time of trial, Chandler's rent payments were current.

The trial court concluded that the hearing official's decision did not constitute a waiver or have any effect whatever on the Housing Authority's right to judicial review of the matter, that the Housing Authority's failure to raise all possible grounds for eviction did not affect its right to terminate the lease for "good cause," and that "good cause" was amply demonstrated by the record. Chandler appeals from the judgment of restitution in favor of the Housing Authority.

## ISSUE

Did the trial court err in concluding that the Housing Authority was not bound by the decision of the lay hearing official following the grievance hearing?

## ANALYSIS

■ As a public housing agency, the Housing Authority is bound by federal regulations and, in particular, by Grievance Procedures and Requirements set out in 24 C.F.R., Subpart B, §§ 966.50–.59 (1986). *See Hoglund-Hall v. Kleinschmidt,* 381 N.W.2d 889 (Minn.Ct.App.1986) (involving housing subject to regulations promulgated by the Farmers Home Administration under 7 C.F.R. § 1930 (1985)). In accordance

with section 966.50,[1] the Housing Authority has adopted grievance procedures and incorporated them into its lease with Chandler. The lease provides:

Grievances or appeals concerning the obligations of the tenant or the Authority under the provisions of the lease shall be processed and resolved in accordance with the Grievance Procedure of the Authority * * *.

Of particular relevance to this case is Part VII of the Housing Authority's grievance procedures:

VII. *Decisions of the Hearing Official (Panel)*

A. Within 10 working days following the hearing, the hearing official (panel) shall give the complainant and Housing Authority a written decision including reasons there[of]. The Authority will file one copy in their tenant files and maintain another copy with names and identifying references deleted for a prospective complainant, his/her representative, or hearing officials (panels).

B. *The decision of the hearing official (panel) shall be binding on the Housing Authority which shall take all actions necessary to carry out the decision unless the Housing Commissioners determine, within five working days, and so notif[y] the complainant that:*

1. The grievance does not concern Authority action or failure to act in accordance with or involving the complainant's lease on Housing Authority regulations which adversely affect the complainant's rights, duties, welfare or status.

2. The *decision of the hearing official (panel) is contrary to applicable Federal, State, or local law,* HUD reg-

---

1. Stated in full, § 966.50 provides:

   The purpose of this subpart [entitled "Grievance Procedures and Requirements"] is to set forth the requirements, standards and criteria for a grievance procedure to be established and implemented by public housing agencies (PHAs) to assure PHA tenants are afforded an opportunity for a hearing if the tenant disputes within a reasonable time any PHA ac-

   tion or failure to act involving the tenant's lease with the PHA or PHA regulations which adversely affect the individual tenant's rights, duties, welfare or status. The grievance procedure provided by this subpart shall be incorporated in the dwelling leases identified as subject to the provisions of § 966.1 of Subpart A.

   24 C.F.R. § 966.50 (1986).

ulations or requirements of the Annual Contributions Contract between HUD and the Housing Authority.

C. A decision by the hearing official (panel) or Housing Commissioners in favor of the Housing Authority *or which denies the relief requested by the complainant in whole or part shall not constitute a waiver of, nor affect in any manner whatever, the rights the complainant may have to a new trial or judicial review* in any proceedings, which may thereafter be brought in the matter.

(Emphasis supplied.)

Chandler contends that the language clearly binds the Housing Authority to the hearing official's decision since the Housing Authority never formally "appealed" from the decision within the designated five day period.

The Housing Authority asserts that this is an overly technical reading of the provision and that its notice of termination, issued to Chandler *two days* after receipt of the hearing official's decision, constitutes notice pursuant to part VII.B.2. that the "decision of the hearing official * * * is contrary to applicable Federal, State or local law * * *."

As additional support, the Housing Authority relies on language from *Minneapolis Community Development Agency v. Smallwood*, 379 N.W.2d 554 (Minn.Ct. App.1985), *pet. for rev. denied*, (Minn. Feb. 19, 1986), where this court found technical failures by the Housing Authority to be of little consequence:

> [The tenant] attempts to excuse the many uncontradicted lease violations by pointing out technical failures of MCDA [the community development agency]. Without excusing those failures in any way, it is nonetheless clear that most of the lease violations bear little or no relation to MCDA failures.

*Id.* at 556. The necessity of sending the tenant a second eviction notice indicates that sufficiency of the original notice fell within this category of "technical failure." Actually in *Smallwood*, before the unlawful detainer action was commenced, a for-

mal hearing panel had recommended lease termination, following five years of continual violation. Here the hearing official recommended probation.

We find the Housing Authority's argument unpersuasive. As a public housing agency, the Housing Authority is strictly bound by the federal regulations. *See Hoglund-Hall*, 381 N.W.2d at 895. The federal regulations unmistakably intend mandatory compliance in stating that: "[t]he lease *shall* provide that all disputes concerning the obligations of the tenant or the PHA [public housing agency] *shall* be resolved in accordance with the PHA grievance procedures which *shall* comply with Subpart B of this part." 24 C.F.R. § 966.-4(m) (1986) (emphasis supplied).

The federal regulations are incorporated almost verbatim into Part VII of the Housing Authority's grievance procedures:

> (b) The decision of the hearing officer or hearing panel shall be binding on the PHA which shall take all actions, *or refrain from any actions*, necessary to carry out the decision unless the PHA Board of Commissioners determines within *a reasonable time, and promptly* notifies the complainant of its determination, that
>
> (1) The grievance does not concern PHA action or failure to act in accordance with or involving the complainant's lease on PHA regulations, which adversely affect the complainant's rights, duties, welfare or status;
>
> (2) The decision of the hearing officer or hearing panel is contrary to applicable Federal, State or local law, HUD regulations or requirements of the annual contributions contract between HUD and the PHA.
>
> (c) A decision by the hearing officer, hearing panel, or Board of Commissioners in favor of the PHA or which denies the relief requested by the complainant in whole or in part shall not constitute a waiver of, nor affect in any manner whatever, *any* rights the complainant may have to a trial *de novo* [emphasis in original] or judicial review in any judicial

proceedings, which may thereafter be brought in the matter.

24 C.F.R. § 966.57 (1986) (entitled "Decision of the hearing officer or hearing panel.") (emphasis generally denotes phrases or words appearing in the federal regulations but not in the Housing Authority's grievance procedures).

■ If a simple *notice of termination of tenancy* were to be deemed sufficient to meet the requirements of section 966.-57(b)(2), we believe the federal regulations would have so stated. We do not imply a preference for form over substance, but simply adhere to the well-established principle that once an agency adopts a rule, it does not have the discretion to disregard it. *See Springborg v. Wilson & Co.*, 245 Minn. 489, 493, 73 N.W.2d 433, 435 (1955). By failing to comply with procedures mandated by federal regulations, the Housing Authority is bound by the hearing official's decision. In particular, it must prepare a probationary agreement with Chandler. If she then fails to comply with the terms of the agreement, it will be time to terminate her tenancy.

The Housing Authority raises additional arguments to support the trial court's findings and conclusions of law: (1) that it was not bound by the grievance decision since the hearing officer was a *lay* person and thus not qualified to render a decision on questions of law and; (2) that it, and not Chandler, assumed the position of "complainant" at the grievance hearing. Thus, the Housing Authority's argument continues, under Part VII.C. of the grievance procedure, any decision by a hearing official "which denies the relief requested by the complainant in whole or part shall not constitute a waiver of, nor affect in any manner whatever, the rights the *complainant* may have to a new trial or judicial review * * *." (Emphasis supplied.) In view of our holding that the Housing Authority was bound by the hearing official's decision when it failed to comply with its own mandatory procedures, only brief comment on these arguments is necessary.

■ First, Part IV.A. of the Housing Authority's grievance procedure does not specify the qualifications of a hearing official, requiring only that this official "shall be an impartial, disinterested person selected jointly by the Housing Authority *and the complainant." See* 24 C.F.R. § 966.55 (1986). Significantly, this provision states that if the parties cannot agree on a single official, each may appoint one member who then selects a third member to serve as a panel. If the Housing Authority had concerns over the qualifications of the hearing official, it should have exercised this option from the outset. Its objection, after an adverse ruling, comes too late.

■ Second, the Housing Authority's claim that it, and not Chandler, assumed the position of complainant is wholly without merit. A complainant is defined under Part I.B. of the grievance procedure as "any *tenant* whose grievance is presented *to the Housing Authority* or at the project management office informally or as part of an informal hearing process." (Emphasis supplied.) The grievance procedure is replete with references to the complainant which logically could only be construed to mean the tenant, not the landlord.

Inasmuch as we base our decision solely on procedural grounds, we need not address the sufficiency of evidence presented by the Housing Authority to support termination of the tenancy.

## DECISION

The trial court erred in granting judgment of restitution to the Housing Authority. The judgment is reversed and the writ of restitution discharged.

Reversed.