## LAWRENCE WARREN AND ANOTHER v. F. J. DRISCOLL AND ANOTHER.[1]

April 15, 1932.

No. 28,477.

[1]Reported in 242 N. W. 346.

*Paul C. Cooper,* for appellant Adolph Sucker.
*E. H. Nicholas,* for appellant F. J. Driscoll.
*Allen & Allen,* for respondents.

DIBELL, J.

Action by Lawrence Warren and the National Surety Company against F. J. Driscoll and Adolph Sucker for an accounting. There was judgment for the plaintiffs, and the defendants appeal.

On September 17, 1927, Sucker, the owner of a quarter section of land in Martin county, leased it to Warren from March 1, 1928, to March 1, 1929, for a cash rental of $1,040, of which $100 was to be paid on January 1, 1928, $400 on or before September 1, 1928, and $540 on or before February 1, 1929. The lease contained this provision:

"And it is Further Agreed, By and between the parties, as follows: That should the said second party fail to make the above mentioned payments as herein specified, or to pay any of the rent aforesaid when due, or fail to fulfill any of the covenants herein contained, then and in that case said first party may re-enter and take possession of the above rented premises, and hold and enjoy the same without such re-entering working a forfeiture of the rents to be paid by the second party for the full term of this lease."

and further this:

"To secure the payment of the rents herein specified and the faithful performance and strict fulfillment of all the covenants of said second party in this lease contained, said second party does hereby expressly mortgage unto said first party all crops growing or grown on said premises during the term of this lease, and does hereby expressly authorize and fully empower said first party in the case of any default on the part of said second party in paying said rent or in performing any of the covenants in this lease, to seize

and take possession of said mortgaged property at once, and sell the same at public auction, with notice as provided by law and out of the proceeds of said sale, to pay and discharge all rents, damages and expenses which may at the time be due and incurred, and pay over to said second party the surplus money arising from such sale."

Warren went into possession on March 1, 1928, and occupied personally until July 16, 1928. At that time he had not paid the $100 rent which became due on January 1, 1928. On July 16, 1928, or about that time, there being an occasional discrepancy in the record relative to dates, he was confined in the county jail under a conviction for maintaining a liquor nuisance upon the premises. Sucker claims a right of forfeiture under the national prohibition act of October 28, 1919; also because of Warren's failure to pay the first instalment of rent.

On July 19, 1928, he visited Warren at the jail. They talked about the harvesting of the crops and the use of Warren's horses and equipment. Warren gave him a writing as follows:

"To Adolph Sucker
"Lewisville, Minn.:

"You are hereby authorized and requested to take full charge and direction of all my personal property and crops located on SE¼ of Sec. 22 of Township 104, Range 29, Martin County, Minnesota. With the right to cut, harvest, and thresh any and all such grain as there is on above farm, take full possession of the building, dispose of the crops at market value, and after paying expenses of harvesting, cutting, threshing and hauling to town and to make a proper accounting thereof to me and my wife Luverne Warren.

"Dated July 19, 1928.

"Lawrence Warren."

On July 25, 1928, Warren assumed to annul this agreement and informed Sucker that his wife's stepfather would take charge of the property and harvest the grain. On July 27, 1928, Sucker assumed to forfeit the lease formally. He leased the farm the same day to

4

the defendant Driscoll for a term ending February 28, 1929, for $1,290. A day or two after Warren was put in jail Lohman Hulbert, the stepfather of Warren, visited him. There was some arrangement made by them that Hulbert should take care of the stock and harvest the crops.

At the time of Warren's commitment to jail the barley was ready for cutting. The oats were not, nor the succotash or flax. Warren had harvested nothing except the first crop of alfalfa, and there was a second crop growing. The corn, except a negligible amount, had been plowed four or five times and laid by. It was not ready for harvest. There was some unmatured garden truck.

On August 20, 1928, Warren brought an action in replevin against Driscoll to recover the small grain which had been threshed; on the ninth day of September he brought an action to recover other small grain; and on October 9, 1928, he brought an action to recover the corn then upon the land and ripe. In each of these cases the plaintiff National Surety Company was surety upon the replevin bond. In the first two the defendants rebonded. In the third they did not, and Warren later harvested the corn. Sucker intervened in all three.

These three replevin actions were tried, and the defendants prevailed. On appeal the trial court was sustained. The case is reported as Warren v. Driscoll, 178 Minn. 344, 227 N. W. 199, 200. The court stated the nature of the action as follows [178 Minn. 346]:

"This is merely a possessory action, and nothing is determined herein but that plaintiff did not show that he was entitled to the immediate possession of the property at the times when the respective actions were instituted; and for the reasons indicated defendant and intervener were entitled to a directed verdict in each case."

The result is that the defendants obtained the small grain and in effect judgment against the plaintiffs for $1,941.05 for the corn. Warren, on the claim of the defendants, got nothing for his labor or investment.

■ Sucker claims a forfeiture for a violation of the conditions of the lease as to rent and because Warren maintained a liquor nuisance upon the farm. He also claims an abandonment.

Forfeitures are not favored and will not be enforced when great injustice is done thereby and the one seeking a forfeiture is adequately protected without. Hanley Falls Creamery Co. v. Milton Dairy Co. 126 Minn. 226, 148 N. W. 46, 52 L.R.A.(N.S.) 718; 4 Dunnell, Minn. Dig. (2 ed.) § 5437; 16 R. C. L. p. 1116, § 634, et seq. And the right of forfeiture may be waived. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5439; 1 Tiffany, Landlord & Tenant, p. 1174, § 182(j).

Sucker claims a right of forfeiture under the national prohibition act of October 28, 1919, 41 St. p. 314, c. 85, § 23, 27 USCA, § 37, which provides:

"Any violation of this chapter upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease."

The statute, it has been held, does not require a conviction; a violation is sufficient. Burke v. Bryant, 283 Pa. 114, 128 A. 821. A number of cases are cited in the notes to USCA bearing upon the statute. In his written notice of cancelation of date July 27, 1928, Sucker said nothing about the violation of the prohibition act. He stated that his ground of action was this:

"This action is taken to protect my interest, rental and the building, you having left the premises removed your furniture from the house and neglected to take care of the crops and building as provided in the lease."

In his talk with Warren at the jail Sucker says that he did not mention the violation of the liquor law. When Warren gave him the writing of July 19, 1928, authorizing him to enter and harvest the crops and apply the proceeds, nothing was said about the liquor trouble nor the $100 rent due. If it were held that Sucker worked a forfeiture of the lease, it still would be true that while he ended the lease and while Warren remained liable for the rent notwithstanding the forfeiture, Sucker, if he rented to another or received net proceeds from the property sufficient to cover the rent, could not again get it from Warren.

6

The rule is that when the forfeiture terminates the lease and the lessee has no longer any interest in the land, and the standing crops go to the lessor, the lessor cannot, in addition to his rent, use the product of the land without an accounting and still exact the agreed rent. Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, 50 L.R.A.(N.S.) 1034, Ann. Cas. 1915B, 609; Guthrie v. Hagen, 162 Minn. 447, 203 N. W. 216; Grommes v. St. Paul Tr. Co. 147 Ill. 634, 35 N. E. 820, 37 A. S. R. 248; Central Inv. Co. v. Melick, 267 Ill. 564, 108 N. E. 681; International Tr. Co. v. Weeks, 203 U. S. 364, 27 S. Ct. 69, 51 L. ed. 224; Hall v. Gould, 13 N. Y. 127; Kiplinger v. Green, 61 Mich. 340, 28 N. W. 121, 1 A. S. R. 584.

■ The facts recited point to a result which protects Sucker without unduly penalizing Warren. It is easy to conclude, as the trial court did, that Sucker had the products of the farm under the provisions of the lease and the writing of July 19, 1928. The court found:

"That plaintiffs are the owners of all crops produced upon said premises in the year of 1928 of whatever name, nature and description, subject, however, to the special interest of the defendants for the rental of said premises for said year as provided in the lease thereof made on September 17th, 1927, by the defendant, Adolph Sucker, as lessor and mortgagee, to the plaintiff, Lawrence Warren, as lessee and mortgagor."

The trial court made an accounting giving the defendants credit. as follows:

| | |
|---|---|
| For rent under lease ......................... | $1,040.00 |
| For interest upon the three instalments from the time they became due ..................... | 126.30 |
| For cost of cutting, threshing, and hauling grain, with interest ............................. | 258.36 |
| Costs in the replevin cases with interest........ | 58.65 |
| Total ............................. | $1,483.31 |

It charged the defendants as follows:

| | |
|---|---:|
| 1,650 bushels of oats at 29 cents | $ 478.50 |
| 1,000 bushels of barley at 52 cents | 520.00 |
| 60 bushels of flax at $2.03 per bushel | 121.80 |
| Interest on $1,120.30 from October 15, 1928, to date at six per cent | 134.40 |
| Total | $1,254.70 |

This left a net amount of $228.61 due the defendants. The judgment in the third replevin suit was for $1,941.05 for the defendants. The court directed that upon the payment of $228.61 it be adjudged that they were not entitled to enforce their judgment for $1,941.05. The defendants were given judgment for costs.

In addition the court gave the defendants their taxable costs and disbursements in the three replevin cases; and suggested that if there was any further claim by way of expenses, as by way of attorney's fees, it might be presented. None was offered. Equity has been done.

The court found against the defendants' claim of abandonment. Its finding is sustained, and no comment is in place.

Judgment affirmed.