The MINNEAPOLIS COMMUNITY DEVELOPMENT AGENCY, Appellant,

v.

Belva SMALLWOOD, Respondent.

No. C6-85-927.

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 19, 1986.

Edward R. Pullman, Asst. City Atty., Minneapolis, for appellant.

Dorinda L. Wider, David L. Ramp, Legal Aid Soc., Minneapolis, for respondent.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

WOZNIAK, Judge.

The Minneapolis Community Development Agency brought an unlawful detainer

action against Belva Smallwood. The trial court denied restitution of the premises to MCDA. We reverse.

## FACTS

In 1977, Smallwood entered into a written lease to rent a new home under a program of single family scattered site dwellings in south Minneapolis. The program is aimed at providing decent and safe housing to low and moderate income families. Tenants in the program are entitled, after notice, to an informal hearing and a formal hearing (before a five-person hearing panel) before commencement of an unlawful detainer action.

This is the third time MCDA has begun eviction proceedings against Smallwood. In 1979, two years after moving into the new home, MCDA had to go so far as an informal hearing before Smallwood would agree to bring herself into compliance with her lease. Several months after that hearing, it was necessary to send a second eviction notice to Smallwood. MCDA alleged five separate lease violations including damaging the physical and social environment of the neighborhood, improperly disposing of rubbish, and keeping pets which disturbed the neighbors and caused property damage. At her formal hearing, the panel recommended that Smallwood be transferred to another house and that:

> Upon moving to a new site she will be placed on probation, whereupon if problems with dog, tall weeds, non-cutting of grass and fire setting occur, she will be evicted immediately without a hearing.

The panel decided in favor of relocation rather than eviction because they felt the neighbors were prejudiced. Ultimately, Smallwood was not transferred because she would not consent to a relocation and her consent was a prerequisite for any transfer. However, it is clear that at least as far back as 1979 Smallwood knew she was in danger of being evicted for numerous lease violations.

Smallwood's behavior did not change. On August 31, 1984, MCDA again found it necessary to evict Smallwood and sent her a lease termination letter. This time, MCDA alleged ten lease violations. The formal hearing panel agreed with MCDA and recommended lease termination based on their finding of the continued violation of nine sections of the lease. MCDA then commenced this unlawful detainer action. The trial court found that Smallwood did not seriously or repeatedly violate the terms of the lease, and denied MCDA its writ of restitution.

## ISSUE

Did the trial court err in refusing to issue a writ of restitution?

## ANALYSIS

██ Unlawful detainer is a civil proceeding, and the only issue for determination is whether the facts alleged in the complaint are true. *See* Minn.Stat. § 566.15 (1984). Our standard of review is whether the trial court's findings of fact are clearly erroneous. Minn.R.Civ.P. 52.01.

At trial, uncontradicted evidence showed that on August 31, when the termination notice was sent, there were numerous lease violations, including interference with the rights of neighbors, the keeping of dogs which terrorized the neighborhood, physical and health hazards on the premises, and serious damage to the home.

In her lease, Smallwood (and other persons on the premises with her consent) agreed to conduct herself in such manner as not to disturb the neighbors' peaceful enjoyment of the neighborhood or downgrade the physical or social environment of the neighborhood. Yet, in the years following MCDA's second eviction attempt, MCDA continued to be bombarded by neighborhood complaints. Neighbors called about loud parties, poor yard upkeep, eggs being thrown at houses, fires being started, unlawful entry in neighbors' homes, cars driving on the yard, firecrackers, a smouldering couch, children spraying paint on the house and walks, neighbors being sworn at, people urinating in Smallwood's yard, neighbors' screens be-

ing cut, and vicious dogs terrorizing and attacking the children in the neighborhood, barking and running loose, in and out of the windows of the house.

Over six years of such conduct, in direct violation of the lease, is certainly enough to constitute good cause for eviction.

Smallwood also agreed in her lease not to keep any pets which annoyed or disturbed the neighbors or caused property damage. In 1981, neighbors advised MCDA that Smallwood was keeping five dogs on the premises and that the dogs were causing problems. The dogs also caused damage to the interior of the home and to the lawn, and in 1982 MCDA told Smallwood that she would only be allowed to keep one dog. Smallwood did nothing, and complaints from the neighbors continued. In July 1984, Smallwood was notified by letter that she could have no pets after August 1. Even as late as the formal hearing in December 1984, however, the dogs were still present.

The trial court found that the dogs were removed by the time of the unlawful detainer hearing. This fact, however, cannot excuse the years of direct lease violation.

Smallwood also agreed in her lease to keep the premises in a decent, safe, and sanitary condition. Numerous inspections by MCDA revealed, however, that the grass needed cutting, debris was in the window wells, extenders were off the downspouts, paw prints were on the siding, decorative frames on the front door were missing, there were cobwebs throughout the dwelling, dirty dishes in the sink, a large hole in the wall between the bathroom and bedroom, burners on the stove were black from spills, the bathroom needed cleaning, numerous other holes in doors and walls, three full garbage cans in the basement, an odor of urine and feces, two or three inches of dog hair on the stairs, and about 15–20 piles of dog feces on the basement floor. In addition, years of junk and debris scattered on the premises resulted in many violation reports by the Department of Inspection. The dwelling was also roach infested and exterminations were performed by MCDA in 1983 and twice in 1984. Once again, however, the trial court's findings do not reflect this uncontradicted evidence.

Smallwood has been the only tenant to reside in the dwelling. The dwelling has a bullet hole from someone shooting at the dog, has had the front door lockset repaired three times, has no screening on some windows, has paint scratched off the front pillar, broken tile in the bathroom, floors that need resanding and varnishing, and a door frame torn loose. In short, Smallwood, her family, and her guests have caused severe damage to the premises.

■ From this review of the record, it is clear that the trial court's findings are erroneous. Apparently the trial court reasoned that current evidence of improvement could be used to negate the undisputed existence of lease violations when the notice was sent on August 31. However, a landlord's right of action for unlawful detainer is complete upon a tenant's violation of a lease condition. *See First Minneapolis Trust Co. v. Lancaster Corp.*, 185 Minn. 121, 131, 240 N.W. 459, 464 (1931). Subsequent remedial action by a tenant cannot nullify a prior lease violation.

Smallwood attempts to excuse the many uncontradicted lease violations by pointing out technical failures of MCDA. Without excusing those failures in any way, it is nonetheless clear that most of the lease violations bear little or no relation to MCDA failures. Further, most of the lease violations, such as the keeping of dogs and the disruption of the tranquility of the neighborhood, bear no relation to Smallwood's handicap (muscular dystrophy).

It is well established that a tenant under various public housing programs possesses no absolute right to public housing and may be evicted for lease violations or other good cause. As Justice Douglas, in his concurring opinion in *Thorpe v. Housing Authority*, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), stated:

A tenant may be evicted if it is shown that he is destroying the fixtures, defacing the walls, disturbing other tenants by boisterous conduct and for a number of other reasons which impair the successful operation of the housing project. Evictions for such reasons will completely protect the viability of the housing project without making the tenant a serf who has a home at the pleasure of the manager of the project or the housing authority.

*Id.* at 679–80, 87 S.Ct. at 1249.

In *Ruffin v. Housing Authority*, 301 F.Supp. 251 (1969), while holding that tenants are entitled to due process before eviction, the court stated:

> There are tenants who violate the minimum requirements of public housing. The Housing Authority is not required to permit lessees to remain in its project if they are dangerous, destructive, or harmful to others. Public housing projects are usually built in urban centers. They accommodate large groups of people. In the interests of other tenants and the public, the managing authorities must impose standards of conduct consistent with substantive principles of justice and the minimum requirements that community living imposes upon civilized human beings. Public housing should not be permitted to become a refuge for those who can not or will not adhere to the minimum rules required for man to live decently in community with his fellow man.

*Id.* at 254.

To properly evict a tenant from public housing requires that the housing authority show that the tenant violated the lease or for other good cause and provide the tenant with due process. All due process requirements were followed. Smallwood is not being evicted for arbitrary, discriminatory or otherwise manifestly improper reasons, but rather for direct violations of her lease.

## DECISION

The trial court's denial of restitution of the premises is reversed where there is uncontradicted evidence of good cause for lease termination.

Reversed.