MINNEAPOLIS PUBLIC HOUSING
AUTHORITY, Appellant,

v.

Mai LOR, Respondent.

No. C2–97–1756.

Court of Appeals of Minnesota.

May 5, 1998.

Review Granted July 16, 1998.

Kenneth V.A. Parsons, Minneapolis, and Louis N. Smith, Smith Parker, P.L.L.P., Minneapolis, for appellant.

Cherie N. Shoquist, Lawrence R. McDonough, Legal Aid Society of Minneapolis, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., TOUSSAINT, C.J., and KALITOWSKI, J.

## OPINION

KALITOWSKI, Judge.

Appellant Minneapolis Public Housing Authority (MPHA) contends the district court erred in dismissing MPHA's unlawful detainer complaint against respondent Mai Lor.

## FACTS

Respondent Mai Lor is the tenant of a public housing property in Minneapolis, where she has resided with her four minor children, including a 17-year-old son. While respondent was out of state because of a relative's illness, her son was involved in a drive-by shooting at another public housing property, and was detained under juvenile charges.

Three guns were found in respondent's home the day after the shooting. At trial, respondent testified that: (1) the family did not own any guns and those found were not her son's; (2) she did not know what the family would do if they were not allowed to remain in public housing; and (3) her son did not cause trouble in school, has a job, and has never before been in trouble with the police or shown any signs of being in a gang. Respondent's son said he would agree to neither live in nor visit the home if the family was allowed to stay.

The termination provisions of the lease provide:

Management shall not terminate, refuse to renew the Lease or evict Tenant from the dwelling unit except for serious or repeated violations of material terms of the Lease or other good cause. Serious violations of the Lease include but are not limited to:

\* \* \* \*

4) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants, neighbors and public housing employees, or drug-related criminal activity on or near the premises engaged in by a Tenant, a member of the Tenant's household, a guest or another person under Tenant's control while the Tenant is a tenant in public housing.

The MPHA brought an unlawful detainer action seeking the eviction of respondent alleging that she violated her lease because a member of her household engaged in criminal activity. Following a trial, the district court found that although the MPHA has a strong interest in removing criminal and gang activity from its properties, eviction was not an appropriate remedy under the facts of this case. The court further stated that since respondent now knows of the criminal activity, she can take appropriate measures to ensure the activity ceases and thus protect the MPHA.

## ISSUES

1. Did the district court err in considering factors other than whether the lease was violated?

2. Were the findings of the district court clearly erroneous in support of its conclusion that eviction was not an appropriate remedy?

## ANALYSIS

### I.

■ The MPHA contends the district court erred as a matter of law in considering facts other than whether the alleged violation of the lease occurred. In support of its argument, the MPHA cites this court's statement that

[u]nlawful detainer is a civil proceeding, and the only issue for determination is whether the facts alleged in the complaint are true. Our standard of review is whether the trial court's findings of fact are clearly erroneous.

*Minneapolis Community Dev. Agency v. Smallwood,* 379 N.W.2d 554, 555 (Minn.App. 1985), *review denied* (Minn. Feb. 19, 1986) (citations omitted). We conclude that this language in *Smallwood* is not controlling here. The statute mandating that public housing leases contain eviction provisions for

criminal activity was enacted subsequent to the *Smallwood* decision. 42 U.S.C.A. § 1437d(*l*)(5) (Supp.1998). Thus the court in *Smallwood* did not consider the district court's role in reviewing the public housing authority's application of the eviction provision at issue here.

Because the plain language of neither the lease nor the statute are clear as to the appropriate exercise of discretion by the public housing authority and the courts, we consider the applicable regulations, comments, and legislative history. *See Burlington Northern R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (allowing courts to consider legislative history when the statute is ambiguous).

Although the statute requires "immediate termination of the tenancy" for some lease violations, it does not automatically require eviction where there is criminal activity by a household member. 42 U.S.C.A. § 1437d(*l*)(7) (Supp.1998). Thus, the statute allows the exercise of discretion by the public housing authority in determining whether eviction is appropriate. Legislative history further suggests that congress intended that courts would in turn exercise their judgment when reviewing the public housing authority's discretionary decision. *See* S.Rep. No. 101–316 at 179 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5941 ("The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA and the eviction court."). We therefore reject MPHA's contention that review of the MPHA's decision by the court is limited to the issue of whether the facts establish a violation of the lease.

Further support for broader district court review of MPHA's decision to evict is found in the language in respondent's eviction letter stating that respondent was "not entitled to use the MPHA's grievance procedure to contest this decision" and that "the opportunity for a hearing in Court" provides "the basic elements of due process as defined in HUD regulations."

Because respondent was not allowed to use MPHA's grievance procedure, she did not have a hearing in front of a neutral factfinder who was required to make specific findings reviewable by the district court. Thus respondent was denied the type of due process protections guaranteed for contested actions involving Minnesota agencies subject to the Administrative Procedure Act, Minn.Stat. §§ 14.001–.69 (1996 & Supp.1997). *See* Minn.Stat. § 14.50 ("It shall be the duty of the administrative law judge to: * * * (3) see to it that all hearings are conducted in a fair and impartial manner. * * * it shall also be the duty of the administrative law judge to make a report on each proposed agency action in which the administrative law judge functioned in an official capacity, stating findings of fact and conclusions and recommendations, taking notice of the degree to which the agency has * * * demonstrated the need for and reasonableness of its proposed action with an affirmative presentation of facts."); Minn.Stat. § 14.58 ("In any contested case all parties shall be afforded an opportunity for hearing * * *, [the issues] shall be fully stated as soon as practicable, and opportunity shall be afforded all parties to present evidence and argument with respect thereto."). Absent these rudimentary due process protections at the administrative level, and consistent with the stated congressional intent that courts exercise "humane judgment" in eviction proceedings, we conclude it was not error for the district court to review the MPHA's discretionary decision to terminate respondent's lease.

## II.

Having determined that district court review of MPHA's decision to evict was appropriate, we further conclude the district court's review here was based on proper considerations. The regulations under which the MPHA operates list the following factors that the agency can consider when deciding whether to terminate a tenant's lease:

In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in

the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit.

24 C.F.R. § 966.4(*l*)(5)(i) (1997). Because the MPHA was authorized to consider "all of the circumstances of the case" including "the extent of participation by family members" we reject the MPHA's argument that the district court erred in specifically addressing whether respondent had knowledge of or reason to anticipate the criminal activity.

■ It is apparent from the district court's findings that the court properly considered the factors specified by the regulations in reaching its conclusion that eviction is not an appropriate remedy. The MPHA contends the district court's findings leading to this conclusion were clearly erroneous. We disagree.

Initially, we note that the district court had the opportunity to make relevant credibility determinations in considering and applying the appropriate factors. Further, we conclude there is substantial evidentiary support for the district court's findings and that the findings in turn support the court's conclusion that eviction was not appropriate. Specifically, the record indicates: (1) respondent was away from the home when her son's criminal activity occurred, and had no knowledge or involvement in the activity; (2) respondent's son is in a juvenile facility, and has agreed to stay away from the home after his release if the family is not evicted; (3) there was no evidence of any other lease violations in the time that respondent has lived in the home; (4) respondent had no reason to anticipate the criminal activity by the minor son; and (5) respondent speaks no English and it would be a severe hardship for respondent and her three younger children to attempt find another residence.

■ Finally, we note that it is the policy of this state that "[f]orfeitures are not favored and will not be enforced when great injustice is done thereby and the one seeking a forfeiture is adequately protected without." *Warren v. Driscoll*, 186 Minn. 1, 5, 242 N.W. 346, 347 (1932). In view of this policy and the facts of this case as found by the district court, we conclude the district court did not err in dismissing the unlawful detainer action.

## DECISION

The district court did not err as a matter of law in reviewing the discretionary decision of the MPHA to bring an unlawful detainer action. Further, the district court did not err in dismissing the unlawful detainer action when it found the evidence established that eviction was not the appropriate remedy.

**Affirmed.**

DAVIES, Judge (concurring specially).

I concur with the majority decision, but write separately to add to the analysis.

Because appellant Minneapolis Public Housing Authority is a governmental body, it cannot be treated in this action as a private landlord. Doing so would risk governmental arbitrariness.

Appellant could have defended itself against the charge of arbitrariness by providing the district court with an explanation of the policy that led to its decision to evict. But the housing authority offered no explanation for its aggressive action until this appeal, when it suggested it was pursuing a "zero-tolerance" policy. Even then, it offered little documentation of that policy. Because even a zero-tolerance policy must have boundaries, and these limits were not explained to the district court, the court itself was compelled to construct reasonable limitations.

An unlawful detainer court could appropriately require the public authority to show that it had made its eviction policies clear to its tenants. As Professor Kenneth Culp Davis has written,

> [w]hen an agency knows what it is doing, it should say in some form what it is. The goal should be to close the gap between what the agency and its staff know about the agency's law and policy and what an outsider can know. The gap can probably never be. completely closed, but the effort should always continue.

*Discretionary Justice: A Preliminary Inquiry* 102 (1969).

In this case, the agency provided no evidence of its usual practices, leaving tenants, the district court, and this court with an impression of hard-hearted arbitrariness.