MINNEAPOLIS PUBLIC HOUSING
AUTHORITY, Appellant,

v.

Mai LOR, Respondent.

No. C2–97–1756.

Supreme Court of Minnesota.

April 8, 1999.

Carol A. Kubic, Kenneth A. Parsons, Minneapolis, MN, Louis N. Smith, Smith Parker P.L.L.P., Minneapolis, MN, for appellant.

Cherie N. Shoquist, Lawrence R. McDonough, Minneapolis, MN, for respondent.

Michael Driscoll, City of St. Paul, St. Paul, MN, for amicus curiae Public Housing Authority of the City of St. Paul.

William F. Maher, Executive Director & Counsel, Housing and Development Law Institute, Washington, DC, for amicus curiae National Association of Housing and Redevelopment Officials; National Association of Housing and Redevelopment Officials, Minnesota Chapter, and Housing and Development Law Institute.

# OPINION

BLATZ, Chief Justice.

Appellant Minneapolis Public Housing Authority (MPHA) contends that when a public housing authority brings an unlawful detainer action against one of its tenants on the basis of alleged criminal activity by a household member, trial courts may not consider facts other than whether the tenant actually violated the lease. As the trial court considered the hardship respondent tenant Mai Lor would face in finding a new apartment, MPHA claims that the trial court reached beyond its powers in ruling for Lor. We conclude that the trial court has the power to review unlawful detainer actions de novo to determine whether the lease was materially breached. The trial court did not make findings on whether Lor materially breached her lease but instead considered equitable circumstances in allowing her to retain her apartment. We reverse the trial court and hold, based upon the trial court's record, that Lor materially breached her lease and should be evicted.

Lor signed a six-page lease with MPHA in 1994. The lease contains two provisions relevant to this case. The first provision, in pertinent part, makes a tenant responsible for the actions of members of her household:

8. Obligations of Tenant's Members of Household, Guests and Other Persons Under Tenant's Control

The Tenant agrees to comply with the following rules. The Tenant is also responsible for causing members of the household, guests or another person under Tenant's control to comply with the following rules.

\* \* \* \*

B. The Tenant shall not:

\* \* \* \*

10) Engage in, or allow members of the household, guests or another person under Tenant's control to engage in any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the public housing premises by other residents and neighbors, or employees of the Management.

The second provision sets out termination grounds for serious lease violations:

10. Termination of Lease

A. Management shall not terminate, refuse to renew the Lease or evict Tenant from the dwelling unit except for serious or repeated violations of material terms of the Lease or other good cause. Serious violations of the Lease include but are not limited to:

\* \* \* \*

4) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants, neighbors and public housing employees, or drug-related criminal activity on or near the premises engaged in by a Tenant, a member of the Tenant's household, a guest or another person under Tenant's control while the Tenant is a tenant in public housing.

In the summer of 1997, as a tenant of MPHA, Lor lived with her four youngest children, including her 17–year–old son K.Y. While Lor was out-of-state on June 17, 1997, K.Y. was involved in a drive-by shooting in which three people were shot. The day after the shooting, police found a loaded handgun, a loaded sawed-off shotgun, an unloaded

handgun, and a spent shotgun shell in Lor's apartment.

MPHA sent Lor an eviction notice dated June 30, 1997. The notice stated that a serious violation of a material lease term had occurred because a household member had engaged in criminal activity. It also stated that because of the nature of the violation, Lor could not access MPHA's grievance procedure to contest her eviction. Lor did not vacate the apartment but instead retained an attorney and contested her eviction. MPHA filed an unlawful detainer action against Lor on July 10, 1998.

At the bench trial, the parties stipulated that Lor is a single mother currently living with her three minor children, and that Lor's son was involved in a drive-by shooting at another public housing residence while a resident of the contested apartment. The trial court made additional findings including a finding that Lor did not have any knowledge of her son's criminal activity or reason to anticipate her son's acts. It reasoned that eviction would create severe hardship for Lor in light of her limited English and her three minor children. In arriving at its decision not to evict, the trial court focused on whether K.Y.'s criminal conduct gave MPHA "sufficient cause" to terminate the lease, and concluded that "[w]hile a public housing authority has a strong interest in removing criminal and gang activity from a project, some discretion must be exercised and this Court is of the opinion that, under the facts of this case, eviction is not an appropriate remedy." [1]

The court of appeals affirmed the trial court, turning to federal statutes to determine the trial court's scope of review of MPHA eviction decisions.[2] The court of appeals stated that court review of public hous-ing authority (PHA) evictions is not "limited to the issue of whether the facts establish a violation of the lease," and allowed the trial court considerable latitude to review equitable circumstances surrounding the eviction.[3] It also noted that as Lor had been barred from MPHA's grievance procedure, trial court review was particularly important to provide adequate due process protections.[4] The court of appeals then concluded that the trial court was not clearly erroneous in barring eviction in light of the hardships Lor would face in securing new housing.[5]

The MPHA appealed the court of appeals' decision, and we granted review.

### I.

■ To determine PHA eviction powers and the trial court's scope of review of PHA eviction decisions, we turn to federal and state legislation and regulations. Statutory construction presents a question of law we review de novo.[6]

PHAs are subject to substantial federal regulation. The Affordable Housing Act, which Congress passed in 1990, addresses grounds for eviction from public housing and requires that local PHAs use leases that:

provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants * * * engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.[7]

■ While the statute does not set forth the role of PHAs or courts in reviewing lease violations, the Housing and Urban Development (HUD) regulations do.[8] Under HUD regulations, PHAs retain the discretion to craft eviction policies that protect other PHA

---

1. *Minneapolis Public Housing Authority v. Lor,* No. UD 1970716525, slip op. at 3 (Hennepin Co. Sept. 10, 1997).

2. *Minneapolis Public Housing Authority v. Lor,* 578 N.W.2d 8 (Minn.App.1998).

3. *Id.* at 10.

4. *Id.*

5. *Id.* at 11.

6. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

7. 42 U.S.C. § 1437d(*l*)(5) (1994).

8. In determining legislative intent, courts may rely on agency regulations. *Rust v. Sullivan,* 500 U.S. 173, 186, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991).

tenants and the larger community while allowing for consideration of individual circumstances. In deciding whether to evict for criminal activities, "the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members * * * *" 9

■ While PHAs are required to provide a grievance procedure for most tenant disputes, the regulations provide that tenants evicted because their household members have allegedly engaged in criminal activities may be excluded from PHA administrative grievance procedures.[10] Tenants excluded from the grievance procedures retain the right to a court hearing that contains the basic elements of due process as defined by HUD.[11] Required elements of due process in the court hearing are: (1) adequate notice to the tenant; (2) the tenant's right to be represented by counsel; (3) an opportunity for the tenant to refute PHA's evidence including the right to confront and cross-examine witnesses and the right to raise affirmative legal or equitable defenses; and (4) a decision on the merits.[12]

Lor argues that the right to the court hearing mandated by federal regulations is a right to a court decision that not only addresses whether the lease was violated, but also takes into consideration equitable factors.[13] To support her argument, Lor points to the Senate Committee Report. She claims that it demonstrates Congress' intent

to create an active court role in public housing evictions. The Senate Committee Report states:

> This provision [42 U.S.C. § 1437d(*l*)(5)] makes criminal activity grounds for eviction of public housing tenants if that action is appropriate in light of all the facts and circumstances.
>
> * * * *
>
> The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.[14]

While the Committee Report references the eviction court's "wise exercise of humane judgment," the federal statute, HUD regulations, and Lor's lease do not imbue the courts with the discretion to consider all the circumstances of a case.[15] In contrast to the Committee Report's vague language, HUD regulations clearly grant PHAs the discretion either to evict tenants whose household members engage in criminal activities or to permit continued occupancy by remaining family members. Further, HUD regulations list external circumstances that PHAs, not courts, should consider when deciding whether to evict a tenant.

Despite HUD's careful clarification of PHA responsibilities, the regulations do not give courts similar discretion when hearing evictions involving the criminal acts of household members. Rather, when discussing the

---

9. 24 C.F.R. § 966.4(*l*)(5)(i) (1998).

10. *Id.* §§ 966.51(a)(1), (2), 966.53(a).

11. *Id.* § 966.4(*l*)(3)(v)(B).

12. *Id.* § 966.53(c). Minnesota's unlawful detainer process has been certified by HUD to meet its due process standards. 61 Fed.Reg. 13276–77 (Mar. 26, 1996).

13. The court hearing required by HUD allows parties to raise equitable defenses in accordance with each state's existing law. However, equita-

ble defenses to contracts permitted by Minnesota law, such as laches and unconscionability, are different than the equitable factors Lor wants the court to address. *See, e.g., LaValle v. Kulkay,* 277 N.W.2d 400, 403 n. 3 (Minn.1979) (laches an equitable defense); *Flynn v. Sawyer,* 272 N.W.2d 904, 908 (Minn.1978) (unconscionability based on equity powers of court).

14. S.Rep. No. 316 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5941.

15. When legislative history is ambiguous as to Congress' intent, courts will defer to agency regulations. *Rust,* 500 U.S. at 186, 111 S.Ct. 1759.

role of courts in such evictions, HUD regulations require only that courts provide due process.[16] In light of HUD's careful crafting of the PHA role in eviction decisions, HUD would likely have spelled out any additional supervisory responsibilities it wished courts to take. Thus, HUD regulations, while providing tenants access to trial courts, do not empower trial courts to consider external circumstances in eviction proceedings. Lor's argument is unavailing.

Still, trial courts have a role in eviction actions brought by a PHA. While PHAs have discretion under federal statutes and regulations to evict tenants, trial courts preside over unlawful detainer actions. Minnesota unlawful detainer law allows a landlord to recover possession of premises when a tenant acts "contrary to the conditions or covenants of the lease * * *."[17] A tenant's answer to an unlawful detainer complaint may contain "all matters in excuse, justification, or avoidance of the allegations,"[18] and the form of the verdict requires that the court find only whether the facts alleged in the complaint are true or not.[19]

Further, a lease is a form of contract.[20] Unambiguous contract language must be given its plain and ordinary meaning,[21] and shall be enforced by courts even if the result is harsh.[22] When a lease empowers a landlord to evict for certain actions, then the trial court shall determine de novo whether the facts alleged in the complaint are true and whether those facts, under the terms of the lease, support termination of the lease and eviction.

Lor's lease states that she shall not "allow members of the household * * * to engage in any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the public housing premises by other residents and neighbors * * *." The lease's language mandates that Lor, as the tenant, be responsible for the actions of members of her household, including her son, and permits MPHA to evict her if a member of her household actually engages in threatening criminal activity. Under the trial court's limited scope of review in unlawful detainer actions, the court was bound to determine only whether Lor's son engaged in such criminal activity and thus whether the lease was breached.

The trial court's findings do not address whether Lor materially breached her lease. Rather, the court relied on equitable principles to deprive MPHA of any relief to which it might have been entitled. Such reliance is tempting because the application of the federal law and regulations will, at times, impose hardship on tenants due to the illegal activities of a family member.

Nonetheless, in determining if the lease was in fact breached, the facts in this case are straightforward. Police acting on an anonymous tip found three guns, two of which were loaded, in Lor's apartment. Further, a juvenile involved in the shooting, Lor's son, was arrested as he drove up to Lor's apartment. These facts indicate criminal activity which threatens the neighbors' safety and right to peaceful enjoyment of the public housing premises, and amount to a material breach of Lor's lease. We therefore reverse and remand to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded.

PAGE and PAUL H. ANDERSON, JJ., concur in part and dissent in part,

STRINGER, J., took no part in the consideration or decision of this case.

---

16. 24 C.F.R. § 966.4(*l*)(3)(v)(B).

17. Minn.Stat. § 566.03, subd. 1(2) (1998).

18. *Id.* § 566.07.

19. *Id.* § 566.15.

20. *See generally* Arthur Linton Corbin, *Corbin on Contracts* § 686 (1960 & Supp.1999).

21. *Bob Useldinger & Sons, Inc. v. Hangsleben,* 505 N.W.2d 323, 328 (Minn.1993).

22. *See Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 357 (Minn.1979) (enforcing unambiguous lease even though result was harsh).

PAGE, Justice (concurring in part and dissenting in part).

I respectfully dissent.[1] The central issues in this case are whether respondent Mai Lor materially breached the terms of her lease with MPHA and whether the eviction proceedings comported with due process requirements. The lease agreement provides for termination of the lease for:

> any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants, neighbors and public housing employees, or drug-related criminal activity on or near the premises engaged in by a Tenant, a member of the Tenant's household, a guest or another person under Tenant's control while the Tenant is a tenant in public housing.

While the district court found that a drive-by shooting occurred and that the police found weapons at Lor's address, the court failed to make a finding regarding whether these events constituted "serious or repeated violations of material terms of the Lease." In addition, the district court did not make any findings regarding K.Y.'s arrest or whether the criminal activity "threaten[ed] the health, safety, or right to peaceful enjoyment of the premises by other tenants, neighbors and public housing employees."[2] In the absence of such findings, we cannot determine whether Lor materially breached the terms of the lease. Moreover, if Lor did not materially breach the terms of the lease, she was not accorded due process when MPHA sought to terminate the lease. Thus, I would remand this case to the district court for specific findings regarding whether Lor materially breached the lease agreement.

PAUL H. ANDERSON, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Page.

---

1. I agree with the court that the trial court should not have relied on equitable principles in determining that the MPHA could not evict Lor.

2. In fact, the only evidence in the record as to whether the "health, safety or right to peaceful enjoyment of the premises" was threatened by K.Y.'s conduct indicates that there was no such threat.