Pamela Ann DeSALLE, Respondent,

v.

GIBRALTAR TITLE AGENCY L.L.C., Defendant and Third–Party Plaintiff, Respondent,

v.

Anthony J. Bolla, et al., Third–Party Defendants, Respondents,

Charles Niska, et al., Third–Party Defendant, Appellants.

No. C6–00–749.

Court of Appeals of Minnesota.

Dec. 26, 2000.

Bradley V. Larson, Metcalf, Larson & Muth, P.A., Monticello, for respondent De-Salle.

Bradley N. Beisel, Hoeschler & Beisel, L.L.P., Minneapolis, for respondent Gibraltar Title Agency.

Gerald S. Paulson, Gregory V. Smith & Associates, Monticello, for respondents Bolla.

Valdis A. Silins, Michael D. Burville, Stephenson & Sanford, P.L.C., Minneapolis, for appellants.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge.

This appeal is from a summary judgment that set aside a mortgage foreclosure because the foreclosure proceeding was

commenced after the statute of limitations expired. We reverse.

### FACTS

On April 30, 1982, respondents Anthony and Virginia Bolla executed a mortgage on their homestead in favor of appellants Charles and Eleanor Niska. The mortgage did not state a specific calendar date upon which the debt secured by the mortgage matured. The mortgage did, however, state:

> PROVIDED NEVERTHELESS, That if said mortgagors, their heirs, executors, administrators, or assigns, shall pay to said mortgagees, their assigns, the survivor of them, or the heirs or assigns of the survivor, the sum of Twenty-four Thousand Nine Hundred and no/100 ($24,900.00) Dollars, according to the terms of one principal promissory note of even date herewith, and due and payable

> The sum of $269.75 per month (representing interest only) commencing June 1, 1982, and continuing monthly thereafter through April, 1983; The sum of $10,000.00 on May 1, 1983, and the balance of $14,900.00 in monthly installment payments of $185.00 per month commencing June 1, 1983, and continuing monthly thereafter until paid in full. Interest to accrue on the deferred balances from and after May 1, 1982, at the rate of 13% per annum, and the monthly installment payment to be first applied to payment of interest accrued and the balance thereof in reduction of principal.

On October 21, 1996, the Bollas conveyed the property to respondent Pamela Ann DeSalle. DeSalle financed her purchase of the property. Respondent Gibraltar Title Agency handled the closing for DeSalle's loan, and in its title search, Gibraltar did not detect the mortgage to the Niskas.

On August 16, 1999, the Niskas served on DeSalle a notice of mortgage foreclosure sale. A sheriff's sale was held on October 8, 1999, and title was transferred to the Niskas.

DeSalle brought suit against Gibraltar seeking a judgment in the amount necessary to satisfy the mortgage to the Niskas. Gibraltar then brought a third-party complaint against the Bollas for indemnification and contribution and against the Niskas for an accounting.[1] DeSalle moved for summary judgment asking the district court to set aside the Niskas' mortgage foreclosure because the statute of limitations began to run on the date of the mortgage, and the foreclosure proceeding was not commenced within the 15 year limitation period. The Niskas also moved for summary judgment. They argued that because the maturity date of the debt secured by the mortgage is clearly stated in the mortgage, the statute of limitations did not begin to run on the date of the mortgage and had not expired when they commenced the foreclosure proceeding.

The district court concluded that there was no dispute that the mortgage note does not include a maturity date or that the Niskas failed to commence their foreclosure action within 15 years of the date of the mortgage and granted DeSalle's motion.

### ISSUE

Did the 15–year period during which the Niskas could commence a proceeding to foreclose the mortgage begin to run on the date of the mortgage?

### ANALYSIS

On appeal from summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *In re Estate of Palmen,* 588 N.W.2d 493, 495 (Minn.1999). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* Questions of law,

---

1. DeSalle, Gibraltar, and the Bollas will be referred to collectively as respondents.

such as questions of statutory construction, are reviewed de novo. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 702 (Minn.1999).

Minn.Stat. § 541.03 (1998) provides:

Subd. 1. **Limitation.** No action or proceeding to foreclose a real estate mortgage, whether by action or advertisement or otherwise, shall be maintained unless commenced within 15 years from the maturity of the whole of the debt secured by the mortgage. \* \* \*

Subd. 2. **When time begins to run; commencement of proceedings.** The time within which any such action or proceeding may be commenced shall begin to run from the date of such mortgage, unless the time of the maturity of the debt or obligation secured by such mortgage shall be clearly stated in such mortgage.

Under this statute, the 15 year limitation period during which the Niskas could commence a foreclosure proceeding began to run on the date of the mortgage, April 30, 1982, unless the time of the maturity of the debt secured by the mortgage is clearly stated in the mortgage.

Citing *Polish Union of the U.S. of N. Amer. v. Kruszewski*, 171 Minn. 252, 213 N.W. 913 (1927), the Niskas argued in the district court that a maturity date is clearly stated in a mortgage when either a specific date is stated in the mortgage or a date can be determined from information contained in the mortgage. They acknowledged that the mortgage they held does not state a specific calendar date upon which the debt secured by the mortgage matures, but they argued that the mortgage contains a clearly stated maturity date because the terms for the payment of the indebtedness are stated succinctly in the mortgage, and it is simple to calculate the maturity date from the information provided in the mortgage. They contended that because the mortgage contains a clearly stated maturity date, the statute of limitations begins to run on the maturity date.

Respondents argued in the district court that the statute provides that if there is no stated maturity date on the face of the mortgage, the foreclosure must be initiated within 15 years from the date that the mortgage was executed. They contended that because the mortgage does not state a specific maturity date, the statute of limitations began to run on the date of the mortgage.

The district court did not expressly determine whether a maturity date could be clearly stated in a mortgage without stating a specific date. But it appears that the district court agreed with respondents' argument that a maturity date could not be clearly stated in a mortgage if the mortgage does not state that a specific date is the maturity date. In the memorandum that accompanied its order granting summary judgment, the district court stated that there was no dispute that the mortgage note does not include a maturity date. Because it is apparent from the arguments the parties made in the district court that they disputed whether the mortgage contained a maturity date that could be determined using the information in the mortgage, we infer that the court meant by this statement only that there was no dispute that the mortgage does not include a specific date that is identified as the maturity date of the debt secured by the mortgage.

It appears that the district court concluded that because the mortgage does not state that a specific date is the maturity date, the maturity date of the debt secured by the mortgage was not clearly stated in the mortgage. Therefore, the 15–year limitation period began to run on the date of the mortgage and expired before the Niskas commenced their foreclosure. This conclusion is not consistent with the supreme court's holding in *Polish Union.*

In *Polish Union,* the supreme court described the mortgage in question as follows:

The mortgage is dated May 28, 1908. It is given to secure $2,000, with interest before and after maturity at 5 per cent per annum according to the conditions of one promissory note for $2,000, and ten interest coupons, each for $50 and each for a semiannual payment of interest, all bearing even date with the mortgage. *Id.* at 253–54, 213 N.W. at 913–14. The mortgage did not recite a specific date as the maturity date of the debt, and the supreme court did not hold that a specific date was required. Instead, upon reviewing the terms of the mortgage, the supreme court concluded that "[a]nyone reading the mortgage would understand that the note matured in five years," *Id.* at 254, 213 N.W. at 914, and held that because the mortgage showed, on its face, the time of the maturity of the debt, the statute of limitations began to run from the time of maturity.

Respondents argue that under *Polish Union,* a maturity date is not clearly stated in a mortgage unless the date is obvious upon a cursory examination of the mortgage and can be easily determined from the terms on the face of the mortgage. They contend that the maturity date of the debt secured by the mortgage the Niskas hold is not obvious and can only be determined by making extensive calculations or by using information that is not contained in the mortgage, such as a pre-printed amortization schedule or computer software that can perform debt-amortization calculations. They conclude that because a maturity date is not readily apparent to anyone reading the mortgage, a maturity date is not clearly stated in the mortgage.

■ But the supreme court did not state in *Polish Union* that to be clearly stated in a mortgage, a maturity date must be obvious upon a cursory examination of the mortgage or that it must be easy to determine the maturity date from the terms on the face of the mortgage. The supreme court simply recognized that it would be easy for anyone reading the mortgage at issue in *Polish Union* to un-

derstand when the maturity date occurred. If the information in another mortgage can be used to determine the maturity date, the fact that it is more difficult to do so does not mean that the maturity date is not clearly stated.

■ Like the mortgage the Niskas hold, the mortgage in *Polish Union* stated the amount of the indebtedness secured by the mortgage, specified the rate at which interest would accrue on the debt, and described the payments that needed to be made to repay the debt. To determine the maturity date of the debt secured by the mortgage, a reader needed to know that semiannual payments occur twice each year and then needed to count forward to determine that the tenth semiannual payment was due at the end of five years. Despite the fact that determining the maturity date required the reader to make calculations using some information that was not in the mortgage, the supreme court concluded that the maturity date was clearly stated in the mortgage.

■ In *Vossen v. Parker,* 609 N.W.2d 290, 293 (Minn.App.2000), this court explained in dicta that:

[T]he purpose of the statute [of limitations] is to prevent clouds on title by requiring that the enforceability of a mortgage be ascertainable from the mortgage itself. Actual notice is thus legally irrelevant: the statute requires the mortgagee to put the world on constructive notice by including in the mortgage itself the information necessary to evaluate its longevity.

The statutory purpose of preventing clouds on title can be accomplished without stating in a mortgage that a specific calendar date is the maturity date of the debt secured by the mortgage. We conclude that under *Polish Union,* the world is put on constructive notice of the longevity of a mortgage if the information necessary to determine the maturity date of the debt is included in the mortgage.

## DECISION

The district court erred when it concluded that because the mortgage does not state that a specific date is the maturity date of the debt secured by the mortgage, the maturity date is not clearly stated in the mortgage. To conclude that a maturity date is not clearly stated in the mortgage, the district court must also conclude that the maturity date of the debt secured by the mortgage cannot be determined from the information in the mortgage.

**Reversed.**

CRIPPEN, Judge (concurring specially)

The legislature does not intend a result that is absurd or unreasonable. Minn. Stat. § 645.17 (2000). This elementary rule of statutory construction dictates that we reverse the trial court's application of Minn.Stat. § 541.03, subd. 2.

I agree with our application of *Polish Union v. Kruszewski,* 171 Minn. 252, 253, 213 N.W. 913 (1927). *Polish Union* does not purport to establish a minimum level of clarity. We have properly said that a clear statement of maturity is one that is "ascertainable from the mortgage itself." *Vossen v. Parker,* 609 N.W.2d 290, 293 (Minn.App.2000). There are additional considerations, I believe, that support our decision in this case.

The limitation period of the statute begins to run from the clearly stated time of maturity. It is wholly unreasonable to suggest, as does respondent, that the clarity of a financial instrument must be so great that everyone or anyone will exactly understand all of its implications. This result is not dictated by the language of the statute or by precedent.

There is nothing unique in an installment plan that calls for payments to apply first to interest and then to principal, with maturity when the principal is fully paid. Once the instrument further states the interest rate and the amount of each payment, the maturity of the obligation is readily ascertainable. A person on the street could not easily state the exact maturity date but could at least sense the prospective years of payments required. Anyone with a need to determine the exact maturity date has easy access to the needed tools to calculate the date readily. The tools now include home computer programs, internet sites, books, and access to persons in the financial world who routinely make these calculations.

The history of this statute of limitations is also instructive. First, it demonstrates years of acceptance of the principle that the maturity of a mortgage obligation must be ascertainable but not more exactly stated in the instrument. Although the statute was enacted in 1907, to this day the Minnesota Title Standards, devised to guide examiners of title in this state, warn that disregard of a mortgage can occur only when 15 years have passed since the maturity date "stated in the mortgage or determined from information contained in the mortgage." *Minnesota Standards for Title Examination* Standard No. 25 (11th ed.1997). The title examiners of Minnesota do not expect the result advanced by respondents, and it should not occur.

History also teaches us that we would risk perpetrating great mischief if we were to affirm the trial court. The mortgage in this case was executed in 1982. Only one year earlier, in 1981, uniform conveyancing blanks in Minnesota first stated a mortgage note obligation with reference to "the final payment being due and payable on" a stated date. Those who employed earlier drafts of the mortgage form, likely including all practitioners executing instruments before 1981, were using a form that provided for description of an installment obligation without specific statement of a final payment date. We must be concerned, in my opinion, that a strict reading of Minn. Stat. § 541.03, subd. 2, would invalidate a number of mortgage obligations still outstanding.

Reflecting on the history of the statute, we rightfully remember that the 1981 revision of the uniform conveyancing blanks

does not carry the weight of a declaration of law. Although the revision may suggest caution against an unreasonable application of the statute of limitations, the law remains as was before. When the maturity date of an installment obligation is ascertainable from the language of the mortgage instrument, the statute runs from the date when the last payment is due.

In my opinion, respondent's arguments for application of section 541.03, subdivision 2, contradict a reasonable reading of statutory language, offend the understanding of the statute that has been an accepted rubric of Minnesota law for nearly a century, and risk the nasty result of nullifying a number of important legal obligations.